

1    Stephen J. Tomasulo (SBN 181013)
        E-mail: stomasulo@hillfarrer.com
2    Whitney B. Kringel (SBN 238964)
        E-mail: wkringel@hillfarrer.com
3    HILL, FARRER & BURRILL LLP
     One California Plaza, 37th Floor
4    300 South Grand Avenue
     Los Angeles, CA 90071-3147
5    Telephone: (213) 620-0460
     Facsimile: (213) 624-4840
6
7    Attorneys for Plaintiffs PONANI
     SUKUMAR and SOUTHERN
     CALIFORNIA STROKE
8    REHABILITATION ASSOCIATES, INC.

FILED
CLERK, U.S. DISTRICT COURT

OCT 21 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12   PONANI SUKUMAR, an individual,     CASE NO. CV10-7930
     and SOUTHERN CALIFORNIA
13   STROKE REHABILITATION             COMPLAINT FOR FALSE
     ASSOCIATES, INC., a California    MARKING
14   corporation,
                                       DEMAND FOR JURY TRIAL
15             Plaintiffs,

16        vs.

17   NAUTILUS, INC., a Washington
     corporation,
18
               Defendant.
19

20

21

22

23

24

25

26

27

28

Plaintiffs Ponani Sukumar ("Sukumar") and Southern California Stroke Rehabilitation Associates, Inc. ("SCSRA"), allege as follows:

## I. NATURE OF THIS ACTION

1. Plaintiffs Sukumar and SCSRA have suffered economic damages resulting from the unlawful conduct of defendant Nautilus, Inc. ("Nautilus") by its intentional false marking of products with patents that (1) never covered the products that they are marked upon or affixed to; and/or (2) do not cover the products that they are marked upon or affixed to because they have expired; and by (3) their marking of products with "PATENTS PENDING" when no patents were pending for such products.

2. Sukumar and SCSRA now bring this action pursuant to 35 U.S.C. § 292(b), which provides that any person may sue for civil penalties for false patent marking.

## II. THE PARTIES

3. Plaintiff Sukumar is an individual with a primary residence in Los Angeles County, California.

4. Plaintiff SCSRA is a corporation organized and existing under the laws of the State of California and having a principal place of business in Los Angeles County, California.

5. Sukumar is the principal shareholder of SCSRA, and created SCSRA as part of his dream of creating an integrative rehabilitation center for those suffering from neuromuscular dystrophies.

6. Defendant Nautilus, Inc. is a corporation organized under the laws of the State of Washington and has its principal place of business in Vancouver, Washington. As explained below, Nautilus was previously known as Direct Focus, Inc. In order to avoid confusion in this case, Plaintiffs will simply refer to this

- 2 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1 defendant as "Nautilus," regardless of whether it was actually known as Direct
2 Focus, Inc. at the time of any particular allegation.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 35 U.S.C. § 292(b).

8. The Court has personal jurisdiction over Nautilus because it is a corporation that is authorized to conduct, and does conduct, substantial business in the State of California, has sufficient minimum contacts with California, and has purposefully availed itself of the California market through the distribution, advertising, and sale of its falsely marked products so as to render this Court's exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(c) and 1395(a).

10. The acts giving rise to this lawsuit, and resulting injuries to Sukumar and SCSRA, also occurred within this district.

## IV. GENERAL ALLEGATIONS

### A. NAUTILUS ACQUIRES AND ASSERTS ITS PATENTS TO DETER COMPETITION.

11. Nautilus is a sophisticated and experienced company when it comes to acquiring, asserting, licensing and collateralizing patents.

12. Nautilus was founded in 1970. Very early in the life cycle of the company, Nautilus recognized the importance of patents as a method of protecting its market. Nautilus first applied for patents in the early 1970s and, by 1980, had initiated its first patent litigation.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 3 -

1      13.    Since that time, Nautilus has amassed a large and complex patent

2 portfolio. By 2001, Nautilus held at least 41 U.S. patents and had applied for at

3 least 29 U.S. and international patents. By the end of 2008, Nautilus had expanded

4 its patent holdings with about 115 patents and trademarks and about 65 U.S. patent

5 and trademark applications pending. Currently, Nautilus holds about 200 patents

6 and trademarks, with about 40 applications pending in the United States.

7      14.    Nautilus has consistently and clearly communicated its ability and

8 intent to assert its patents against its competitors. All of its recent Annual Reports

9 warn that Nautilus protects its "proprietary rights vigorously." (See 2006, 2007,

10 2008 and 2009 10-K filings).

11      15.    And indeed, Nautilus has a long tradition of bringing patent suits

12 against its competitors. For instance, Nautilus, or its predecessor companies,

13 brought the following patent suits against its key competitors:

14       a. On October 16, 1980, Nautilus predecessor Arthur Jones (doing

15           business as Nautilus Sports/Medical Industries) sued the World

16           Fitness Center, Inc. and others for alleged patent infringement of

17           U.S. Patent Nos. 3,858,873 and 3,998,454[1] directed to, respectively,

18           a weight lifting exercise machine and a part for an exercise

19           machine. These patents expired on January 7, 1992 and December

20           21, 1993, respectively.

21       b. In November 1980, one month later, Arthur Jones also sued Ray W.

22           Fox, doing business as Carrollwood Fitness Center, for alleged

23           patent infringement of the same patents.

24       c. On November 5, 1993, Nautilus predecessor Nautilus International,

25           Inc. sued Body Masters Sports Industries, Inc. for alleged patent

26           infringement of U.S. Patent No. 4,478,411 directed to an apparatus

27

28    [1] All of the patents cited herein are publicly available and are incorporated by reference as if set forth in their entirety.

- 4 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    and a method for exercising the abductor or adductor muscles. This

2    patent expired on October 23, 2001.

3    d. On November 19, 1993, Nautilus International, Inc. sued Lumex,

4    Inc. for alleged patent infringement of U.S. Patent Nos. 4,456,245,

5    4,478,411, and 4,500,089 directed to, respectively, an apparatus and

6    a method for exercising torso rotation muscles, an apparatus and a

7    method for exercising the abductor or adductor muscles, and a

8    weight lifting machine for the lower back. These patents expired

9    on December 11, 2001, October 23, 2001, and January 20, 2003,

10   respectively.

11   e. On November 1, 2001, Nautilus sued Mad Dogg Athletics, Inc. for

12   alleged patent infringement of U.S. Patent No. 5,961,424 directed

13   to a clutch mechanism for use on exercise bicycles. This patent is

14   set to expire no later than August 28, 2017.

15   f. On August 1, 2002, Nautilus sued Precor, Inc. for alleged patent

16   infringement of U.S. Patent Nos. 5,242,343 and 5,383,829 directed

17   to a stationary exercise device for simulating running and stepping

18   motions. These patents are set to expire no later than September

19   30, 2012 and August 13, 2013, respectively.

20   g. On December 3, 2002, Nautilus sued Weider Health and Fitness,

21   Weider Nutrition International, Inc., Weider Nutrition Group, Inc.,

22   and Icon Health & Fitness, Inc. for alleged patent infringement of

23   U.S. Patent Nos. 4,620,704 and 4,725,057 directed to a rod-based

24   exercise machine. These patents expired no later than April 27,

25   2004 and November 3, 2006, respectively.

26   h. On December 22, 2006, Nautilus sued Keys Fitness Products, LP

27   for alleged patent infringement of U.S. Patent Nos. 5,961,424,

28   6,557,679, and 6,641,507 directed to a clutch mechanism for use on

- 5 -

exercise bicycles. These patents are set to expire no later than August 28, 2017, August 23, 2019, and August 23, 2019, respectively.

i. On August 22, 2007, Nautilus sued I M&M Exercise Equipment, Inc., doing business as Extreme Fitness, for alleged patent infringement of U.S. Patent Nos. 6,422,979, 7,077,791, D528,173 S, and D528,611 S directed to, respectively, methods and apparatus for weight selection, and designs for an adjustable dumbbell base and an adjustable dumbbell. These patents are set to expire no later than April 27, 2019, April 18, 2022, November 12, 2020, and September 19, 2020, respectively.

j. And on June 11, 2008, Nautilus sued Yongkang Star Fitness Equipment Co., Ltd., Yongkang Letwin Import & Export Co., Ltd., and Kelly Cheng for alleged patent infringement of U.S. Patent Nos. D540,405 S and D540,894 S directed to designs for adjustable dumbbells. These patents are set to expire no later than April 10, 2021 and April 17, 2021, respectively.

## B. NAUTILUS IS FINED FOR FALSELY MARKING ITS PRODUCTS AS PATENTED

16. By the late 1990s, with many of its founding patents expiring, Nautilus had begun a campaign of falsely claiming that its products were patented when in fact they were not. For instance, by the late 1990s, Nautilus was systematically "marking" its products with patents that (1) never covered the products that they are marked upon or affixed to; and/or (2) do not cover the products that they are marked upon or affixed to because they were expired at the time of manufacture.

17. For instance, Nautilus "Prone Leg Curl" machines manufactured in 1999, as part of Nautilus's 2ST product line, include a "patent marking" label affixed to the machine, which states that the product is "MANUFACTURED

- 6 -

COMPLAINT FOR FALSE MARKING

UNDER U.S. PATENT NUMBERS AND OTHER PATENTS PENDING." The patent marking label includes at least three (3) patents that expired before 1999: U.S. Patent Nos. 3,858,873; 3,998,454; and 4,257,592. These patents expired on January 7, 1992, December 21, 1993, and November 29, 1998, respectively. Further, the product is marked with patents that do not cover the product. The purpose of the Prone Leg Curl is to exercise leg muscles. And yet, this product is marked with U.S. Patent No. 3,998,454 which covers an invention for exercising arm muscles; U.S. Patent Nos. 4,733,860 and 5,104,121 which cover inventions for exercising torso muscles; and U.S. Patent No. 4,387,893 which covers an invention for exercising abdominal muscles. Since at least two of these falsely marked patents had previously been litigated by Nautilus, Nautilus was certainly aware of when they expired and what they covered.

18.    Nautilus is no stranger to deceptive advertisements. In 2005, Nautilus's deliberate conduct of falsely marking and advertising its products as patented resulted in a jury verdict that Nautilus had falsely marked and advertised its Bowflex machines for over a decade. *Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, 2006 U.S. Dist. LEXIS 24153 (D. Utah Mar. 23, 2006). Nautilus's marketing materials used false statements indicating that its "Power Rods," a core component of the Bowflex machine, are patented or are manufactured with patented technology. Nautilus also had claimed to be the developer and exclusive supplier of poly-hexamethaline-adipamide, one of the most common forms of nylon, used in its Bowflex Power Rods. The jury unanimously found that "Nautilus had promoted an unpatented article . . . as patented and that Nautilus did so with the *purpose of deceiving the public*." *Id.* at *8 (emphasis added). For Nautilus's false advertising violations, the jury awarded damages in the amount of $7,478,774.08, and the court imposed the maximum penalty of $325,000 for 650 separate false marking offenses.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 7 -

## C. NAUTILUS CONTINUES, UNABATED, TO FALSELY MARK ITS PRODUCTS EVEN AFTER AN AVERSIVE UNANIMOUS VERDICT IN THE ICON HEALTH SUIT.

19. Undeterred, Nautilus continued to falsely mark its products in spite of the Icon Health suit. From 2006, just as the Icon Health suit was concluding, to today, Nautilus falsely marked multiple lines of products, including its elliptical trainers, StairMaster products and its Nitro, Nitro Plus, Studio, F2, XPLoad and Nautilus One product lines. For instance:

    a. The 2006 Nitro Plus models of Biceps Curl, Lower Back, Abdominal, Leg Extension, Seated Leg Curl, Gravitron Chin/Dip, Hip Abduction/Hip Adduction, Rear Delt/Pec Fly, Incline Press, Overhead Press, Vertical Chest, Lateral Raise, Pullover, and Triceps Extension are all falsely marked with at least 12 expired patents. Furthermore, they are falsely marked with patents unrelated to the products upon which the patent markings are affixed, such as U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means, and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

    b. The 2006 models of Nautilus Commercial Series elliptical trainers, E916 and EV916, and StairMaster StepMill 7000PT trainers, are all falsely marked with at least 4 expired patents. Furthermore, they are falsely marked with patents that do not cover the products to which they are affixed, such as U.S. Patent No. 5,312,313, directed to an exerciser for chin-ups and dips, U.S. Patent No. 5,380,258, directed to a rope climbing apparatus, and U.S. Patent No. D

- 8 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

COMPLAINT FOR FALSE MARKING

357,956, directed to a design for a weight machine for use from a wheelchair.

c. The 2007 models of Nitro Plus Seated Dip, Nautilus One Biceps Curl, Nitro Pec Fly, XPLoad Seated Dip, Nitro V-Triceps Extension, Nitro Biceps Curl, and XPLoad Overhead are all falsely marked with at least 14 expired patents. Furthermore, they are falsely marked with patents that do not cover the products to which they are affixed, such as U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means, and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

d. The 2008 models of XPLoad Lat Pulldown, Studio Compound Row, Studio Pec Fly, Nitro Plus Compound Row, XPLoad Compound Row, Studio Lat Pulldown, F2 Lat Pulldown, and Studio Seated Leg Curl are all falsely marked with at least 14 expired patents. Furthermore, they are falsely marked with patents that do not cover the products to which they are affixed, such as U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means, and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

e. The 2009 models of Nitro Plus Seated Calf, Nautilus One Seated Leg Curl, and Nautilus One Pec Fly are all falsely marked with at least 14 expired patents. Furthermore, they are falsely marked with patents that do not cover the products to which they are affixed,

- 9 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

such as U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means, and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

20.     In addition to Nautilus's abject disregard for the adverse verdicts regarding its false marking practices, Nautilus's motive to persevere in its deceptive, reckless and illegal conduct can be seen from Nautilus SEC filings, which clearly discuss how the expiration and limited scope of Nautilus's patents were threatening Nautilus's ability to compete in the market:

- "Protecting our intellectual property is an important factor in maintaining our competitive position in the fitness and mattress industries. **If we do not or are unable to adequately protect our intellectual property, our sales and profitability could be adversely affected.**" (April 13, 1999 Nautilus Form S-1/A, *available at* http://investors.nautilusinc.com/sec.cfm) (emphasis added).

- "We believe all patents are important to our strategy. . . . The expiration of our patents could trigger the introduction of similar products by competitors." (March 15, 2004 10-K, *available at* http://investors.nautilusinc.com/sec.cfm).

**D.     SUKUMAR AND SCSRA SUFFER COMPETITIVE INJURY AS THEY ATTEMPT TO DESIGN REHABILITATION EQUIPMENT WHILE RESPECTING THE NAUTILUS PATENT PORTFOLIO.**

21.     In 1994, Sukumar's father suffered a debilitating neurovascular event.

- 10 -

COMPLAINT FOR FALSE MARKING

HILL, FARRER & BURRILL, LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

22.     In accordance with Sukumar's culturally-rooted dedication to his parents, he made the rehabilitation of his father his utmost and single most important priority. Sukumar adopted an integrative approach to his father's rehabilitation. This approach included the use of specialized medical rehabilitation machines, among other treatment modalities. Using Sukumar's rehabilitation protocol, his father regained more of his mental and physical functionality than his doctors thought possible and lived significantly longer than his doctors thought possible.[2]

23.     In connection with his father's care, Sukumar absorbed himself in the study of physical rehabilitation and the search for new and improved ways to assist elderly patients like his father. Through this process, Sukumar gained a deep understanding of the rehabilitation needs of the elderly. He came to recognize the fast-growing demographic in the United States of 50+ year olds who would benefit from an integrative approach to rehabilitation. Through his experiences in caring for his father, Sukumar came to believe that a specific, specialized, customized, equipment-based protocol could be used to help other elderly patients like his father make better and more meaningful progress in rehabilitation.

24.     In 2004, Sukumar formed SCSRA to help him realize his dream to use an integrative equipment-based protocol to help those who, like his father, suffered from any number of neuromuscular dystrophies. In addition to the benefit it would provide for its patients, Sukumar also believed that SCSRA would generate profits for himself. All of SCSRA's activities including the acquisition of Nautilus equipment as alleged herein were centered in Southern California and SCSRA owns a substantial amount of falsely marked Nautilus equipment which is located in the Central District of California.

---

[2] Sukumar's father, Ponani Narayanan, lived approximately 10 years beyond the lifespan predicted by his primary care physicians.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

25.     Sukumar intended for SCSRA to offer "traditional" physical rehabilitation as a fundamental component of its rehabilitation program in addition to other treatment modalities, including diet and mental and spiritual wellness.

26.     Sukumar searched for cardiovascular, stretching, and strength training exercise machines that he could use with those in need of rehabilitation. In particular, he sought a multi-station solution which utilized known resistance-to-user principles in conjunction with weight increments as small as one pound. Such features were important to Sukumar, inasmuch as the equipment's design would allow medical specialists and licensed therapists to create and "fine-tune" clients' treatment plans to meet their individual and changing abilities. Also, the precise and low-weight resistance-to-user feature was important as it would permit injured, as well as frail elderly clients with limited physical strength, to utilize the machines at low, incremental resistance levels. Otherwise, these clients would be excluded from benefiting from traditional rehabilitation machines. Sukumar also searched for machines that would protect compromised clients from injuries caused by the mere act of using such equipment. He was intent upon finding and/or developing machines that incorporated safety features such as weight shields, soft top stops to limit motion range, and various breakaway features to ensure that users of the machines would not inadvertently injure themselves during the rehabilitation process.

27.     After conducting an extensive search, Sukumar determined that the marketplace did not offer an "off-the-shelf," medical grade product that would meet all of his needs for rehabilitating his father and those like him. After an exhaustive search, Sukumar concluded that machines manufactured by Nautilus were best-suited for rehabilitation but they, too, needed modifications to meet the needs of the rehabilitation protocol he had developed for the elderly.

28.     Sukumar believed that he could make the design modifications that his target demographic would need. In addition to holding an MBA from the Wharton

- 12 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

School of Business at the University of Pennsylvania, Sukumar holds equivalent Bachelor of Science degrees from India and the United Kingdom in mechanical, electrical, and rail traction technology engineering that he believed provided him with the knowledge he needed to re-design, retrofit and modify Nautilus's exercise machines to serve his target demographic's needs.

29. Sukumar was aware that various Nautilus technologies were patented and that Nautilus owned an extensive patent portfolio. Patent markings on Nautilus equipment that Sukumar had examined included patent-marking labels, or plaques, each including a large number of patent numbers. Sukumar concluded the technology he sought for rehabilitation was heavily protected by Nautilus patents. Sukumar doubted that he was capable of designing around so many patents to create machines that satisfied his goals but did not infringe Nautilus's patent rights. Thus, Sukumar concluded that Nautilus was the best and perhaps only source of the technology he sought for rehabilitation. So, he paid Nautilus more than $150,000 to manufacture custom machines that implemented Sukumar's designs.

30. The customized equipment that Sukumar paid Nautilus to manufacture for him did not meet his expectations or the needs of SCSRA. So, with no alternate source, Sukumar (both individually and through SCSRA) was forced to sue Nautilus multiple times, at great cost, to attempt to get Nautilus to provide machines that comply with Sukumar's design and fit and finish specifications. This litigation has gone on for years, and throughout the entire time, Sukumar has maintained his desire to specially design exercise equipment for SCSRA. However, he has continued to be intimidated and deterred from doing so by the patent markings on equipment manufactured by Nautilus. If not for these false and misleading patent markings, Sukumar would have attempted to design and build, or retained someone to design and build, machines that suited his needs. Nautilus's misleading patent markings caused Sukumar and SCSRA to suffer competitive injuries, in part because Sukumar came to believe that Nautilus patents precluded

- 13 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

him and SCSRA from manufacturing rehabilitation equipment or modifying Nautilus equipment so that it could be used in rehabilitation. Sukumar and SCSRA concluded that Nautilus was the only source of suitable technology. Sukumar then pursued a variety of legal strategies, including protracted litigation and attempts to purchase and/or license the intellectual property patents he believed to be valid, in order to legally have access to the technology he believed necessary to bring his rehabilitation protocol to market.

31. On multiple occasions, Sukumar has attempted to license patents from Nautilus so that he could modify and design exercise equipment without potentially infringing Nautilus's patent rights. For instance, in July of 2004, Sukumar, through his lawyers, communicated to Nautilus that he was interested in acquiring a license to use some of their patents. When this did not go anywhere, Sukumar again raised this issue in an August 17, 2009 letter from his lawyers at Jones Day to Nautilus's lawyers. In that letter Sukumar proposed a deal pursuant to which he would acquire a license under the Nautilus patents and patent applications to make and have made for use exclusively in Sukumar-owned rehabilitation centers equipment and parts that are covered by a claim of Nautilus's patent rights. Nautilus did not respond to this proposal.

32. Sukumar's ongoing belief that he needed a license from Nautilus because Nautilus's vast patent portfolio precluded him from designing and building the machines that SCSRA desired was fueled by the fact that Sukumar was informed that Nautilus was using its patent portfolio as collateral for a massive line of credit that it obtained through Bank of America. Sukumar has subsequently learned that the amount of this line of credit was $100,000,000. Sukumar reasonably believed that if Nautilus, in its capacity as a publicly traded company, proffered its patent-related intellectual property portfolio as collateral to a federally regulated banking institution, then Nautilus's patents must be legitimate and valid

- 14 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

and must cover Nautilus technology in the manner represented by Nautilus on its commercial products.

33. Sukumar has only recently learned that the patents identified on the sought-after Nautilus products include many patents that are expired or do not cover the products that they are marked on.

## V. FIRST CAUSE OF ACTION: FALSE MARKING UNDER 35 U.S.C. § 292

34. Sukumar and SCSRA re-allege and incorporate by reference herein the allegations of the preceding and foregoing paragraphs.

35. Plaintiffs have suffered competitive injuries and bring this false marking claim under the patent laws of the United States, 35. U.S.C. § 292.

36. A false marking claim is a qui tam claim, which means that Plaintiffs bring the claim on behalf of the U.S. government as well as themselves. The statute provides:

> "Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense."

37. In 2005, the Federal Circuit defined the term "unpatented article" as follows:

> "When the statute refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked."

*Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (emphasis added).

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 15 -

38.    The Federal Circuit has also explained that "articles marked with expired patent numbers are falsely marked." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362 (Fed. Cir. 2010).

## A.    NAUTILUS HAS FALSELY MARKED EQUIPMENT WITH PATENTS THAT DO NOT COVER THE MARKED EQUIPMENT AND WITH EXPIRED PATENTS.

39.    Throughout the past decade, and within the past five years, Nautilus has marked exercise equipment with patent numbers that (1) never covered the products that they are marked upon or affixed to; and/or (2) do not cover the products that they are marked upon or affixed to because they have expired. Additionally, Nautilus has marked products with "PATENTS PENDING," when in fact, upon information and belief, many of the Nautilus products marked do not have any such patents pending.

40.    Nautilus typically "marks" its machines by affixing -- either adhesively or mechanically -- a "patent marking" label to the machine. The patent marking labels affixed to Nautilus machines typically include a statement that the product is "MANUFACTURED UNDER U.S. PATENT NUMBERS AND OTHER PATENTS PENDING," followed by a listing of U.S. patent numbers. Many Nautilus machines sold by Nautilus in the last five years were falsely marked in that the patent marking label affixed to the machine includes patents that simply do not cover the machine and/or patents that were expired at the time of sale. Some expired patents marked on the subject machines had been invalid for as long as 16 years.

41.    Since 2006, Nautilus has demonstrably falsely marked at least the following Nautilus product lines: Nautilus elliptical trainers, StairMaster products and Nautilus's Nitro, Nitro Plus, Studio, F2, XPLoad and Nautilus One product lines.

- 16 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

42.     For instance, Nautilus has falsely marked at least the 2006 versions of the Nitro Plus Biceps Curl, Lower Back, Abdominal, Leg Extension, Seated Leg Curl, Gravitron Chin/Dip, Hip Abduction/Hip Adduction, Rear Delt/Pec Fly, Incline Press, Overhead Press, Vertical Chest, Lateral Raise, Pullover, and Triceps Extension. Each includes a patent marking label that is affixed to the product that includes the following language: "MANUFACTURED UNDER U.S. PATENT NUMBERS AND OTHER PATENTS PENDING," followed by a listing of 24 patents, a substantial number of which are expired or do not contain any claims that cover the product. Specifically:

a. 2006 Nitro Plus Biceps Curl is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

b. 2006 Nitro Plus Lower Back is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least,

- 17 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

c. 2006 Nitro Plus Abdominal is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

d. 2006 Nitro Plus Leg Extension is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an

- 18 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

exercising person and correlate that monitored effort exerted to a programmed standard.

e. 2006 Nitro Plus Seated Leg Curl is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

f. 2006 Nitro Plus Gravitron Chin/Dip is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

- 19 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

g. 2006 Nitro Plus Hip Abduction/Hip Adduction is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

h. 2006 Nitro Plus Rear Delt/Pec Fly is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents, at least, include U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

i. 2006 Nitro Plus Incline Press is falsely marked with at least twelve (12) patents that had expired before the product was manufactured

- 20 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  and at least two (2) patents that do not cover the product. Expired

2  patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454;

3  4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089;

4  4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked

5  on the machine which do not cover the machine include, at least,

6  U.S. Patent No. 4,257,592, directed to an exercising apparatus with

7  handle, rope, and clamping means; and U.S. Patent No. 4,493,485,

8  directed to an exercising apparatus and a method which monitor

9  and display physical effort exerted by an exercising person and

10  correlate that monitored effort exerted to a programmed standard.

11  j. 2006 Nitro Plus Overhead Press is falsely marked with at least

12  twelve (12) patents that had expired before the product was

13  manufactured and at least two (2) patents that do not cover the

14  product. Expired patents include, at least, U.S. Patent Nos.

15  3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411;

16  4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and

17  4,666,152. Patents marked on the machine which do not cover the

18  machine include, at least, U.S. Patent No. 4,257,592, directed to an

19  exercising apparatus with handle, rope, and clamping means; and

20  U.S. Patent No. 4,493,485, directed to an exercising apparatus and

21  a method which monitor and display physical effort exerted by an

22  exercising person and correlate that monitored effort exerted to a

23  programmed standard.

24  k. 2006 Nitro Plus Vertical Chest is falsely marked with at least

25  twelve (12) patents that had expired before the product was

26  manufactured and at least two (2) patents that do not cover the

27  product. Expired patents include, at least, U.S. Patent Nos.

28  3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411;

- 21 -

4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

l. 2006 Nitro Plus Lateral Raise is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

m. 2006 Nitro Plus Pullover is falsely marked with at least twelve (12) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and 4,666,152. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with

- 22 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    handle, rope, and clamping means; and U.S. Patent No. 4,493,485,

2    directed to an exercising apparatus and a method which monitor

3    and display physical effort exerted by an exercising person and

4    correlate that monitored effort exerted to a programmed standard.

5    n. 2006 Nitro Plus Triceps Extension is falsely marked with at least

6    twelve (12) patents that had expired before the product was

7    manufactured and at least two (2) patents that do not cover the

8    product. Expired patents include, at least, U.S. Patent Nos.

9    3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411;

10    4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; and

11    4,666,152. Patents marked on the machine which do not cover the

12    machine include, at least, U.S. Patent No. 4,257,592, directed to an

13    exercising apparatus with handle, rope, and clamping means; and

14    U.S. Patent No. 4,493,485, directed to an exercising apparatus and

15    a method which monitor and display physical effort exerted by an

16    exercising person and correlate that monitored effort exerted to a

17    programmed standard.

18    43.    Nautilus has also falsely marked at least the 2006 versions of the

19 StairMaster StepMill 7000PT trainer, and Nautilus Commercial Series E916 and

20 EV916 elliptical trainers. Each includes a patent marking label that is affixed to the

21 product that includes the following language: "MANUFACTURED UNDER U.S.

22 PATENT NUMBERS AND OTHER PATENTS PENDING," followed by a listing

23 of 16 patents, a substantial number of which are expired or do not contain any

24 claims that cover the product. Specifically:

25    a. 2006 StairMaster StepMill 7000PT trainer is falsely marked with at

26    least four (4) patents that had expired before the product was

27    manufactured and at least three (3) patents that do not cover the

28    product. Expired patents include, at least, U.S. Patent Nos.

- 23 -

4,687,195; 5,060,938; 5,290,205; and 5,380,258. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 5,312,313, directed to an exerciser for chin-ups and dips; U.S. Patent No. 5,380,258, directed to a rope climbing apparatus; and U.S. Patent No. D 357,956, directed to a design for a weight machine for use from a wheelchair.

b. 2006 Nautilus Commercial Series E916 Elliptical is falsely marked with at least four (4) patents that had expired before the product was manufactured and at least three (3) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 4,687,195; 5,060,938; 5,290,205; and 5,380,258. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 5,312,313, directed to an exerciser for chin-ups and dips; U.S. Patent No. 5,380,258, directed to a rope climbing apparatus; and U.S. Patent No. D 357,956, directed to a design for a weight machine for use from a wheelchair.

c. 2006 Nautilus Commercial Series EV916 Elliptical is falsely marked with at least four (4) patents that had expired before the product was manufactured and at least three (3) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 4,687,195; 5,060,938; 5,290,205; and 5,380,258. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 5,312,313, directed to an exerciser for chin-ups and dips; U.S. Patent No. 5,380,258, directed to a rope climbing apparatus; and U.S. Patent No. D 357,956, directed to a design for a weight machine for use from a wheelchair.

44. Nautilus has also falsely marked at least the 2007 models of Nitro Plus Seated Dip, Nautilus One Biceps Curl, Nitro Pec Fly, XPLoad Seated Dip, Nitro V-

- 24 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

Triceps Extension, Nitro Plus Biceps Curl, and XPLoad Overhead Press. Each includes a patent marking label that is affixed to the product that includes the following language: "MANUFACTURED UNDER U.S. PATENT NUMBERS AND OTHER PATENTS PENDING," followed by a listing of 24 patents, a substantial number of which are expired or do not contain any claims that cover the product. Specifically:

a. 2007 Nitro Plus Seated Dip is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

b. 2007 Nautilus One Biceps Curl is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope,

- 25 -

and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

c. 2007 Nitro Pec Fly is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

d. 2007 XPLoad Seated Dip is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an

- 26 -

HILL, FARRER & BURRILL, LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

exercising person and correlate that monitored effort exerted to a programmed standard.

e. 2007 Nitro V-Triceps Extension is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

f. 2007 Nitro Plus Biceps Curl is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

- 27 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

g. 2007 XPLoad Overhead Press is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

45. Nautilus has also falsely marked at least the 2008 models of XPLoad Lat Pulldown, Studio Compound Row, Studio Pec Fly, Nitro Plus Compound Row, XPLoad Compound Row, Studio Lat Pulldown, F2 Lat Pulldown, and Studio Seated Leg Curl. Each includes a patent marking label that is affixed to the product that includes the following language: "MANUFACTURED UNDER U.S. PATENT NUMBERS AND OTHER PATENTS PENDING," followed by a listing of 24 patents, a substantial number of which are expired or do not contain any claims that cover the product. Specifically:

a. 2008 XPLoad Lat Pulldown is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the

- 28 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

    b. 2008 Studio Compound Row is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

    c. 2008 Studio Pec Fly is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and

- 29 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

d. 2008 Nitro Plus Compound Row is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

e. 2008 XPLoad Compound Row is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860.

f. 2008 Studio Lat Pulldown is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454;

- 30 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

g. 2008 F2 Lat Pulldown is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

h. 2008 Studio Seated Leg Curl is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152;

- 31 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

46.     Nautilus has also falsely marked at least the 2009 models of Nitro Plus Seated Calf, Nautilus One Seated Leg Curl, and Nautilus One Pec Fly. Each includes a patent marking label that is affixed to the product that includes the following language: "MANUFACTURED UNDER U.S. PATENT NUMBERS AND OTHER PATENTS PENDING," followed by a listing of 24 patents, a substantial number of which are expired or do not contain any claims that cover the product. Specifically:

a. 2009 Nitro Plus Seated Calf is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 32 -

b. 2009 Nautilus One Seated Leg Curl is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

c. 2009 Nautilus One Pec Fly is falsely marked with at least fourteen (14) patents that had expired before the product was manufactured and at least two (2) patents that do not cover the product. Expired patents include, at least, U.S. Patent Nos. 3,858,873; 3,998,454; 4,257,592; 4,387,893; 4,456,245; 4,478,411; 4,493,485; 4,500,089; 4,511,137; 4,589,656; 4,600,196; 4,666,152; 4,733,860; and 5,810,696. Patents marked on the machine which do not cover the machine include, at least, U.S. Patent No. 4,257,592, directed to an exercising apparatus with handle, rope, and clamping means; and U.S. Patent No. 4,493,485, directed to an exercising apparatus and a method which monitor and display physical effort exerted by an exercising person and correlate that monitored effort exerted to a programmed standard.

47. Nautilus, throughout the relevant time period, has sold a large variety of products under at least the following brands: Bowflex, Nautilus, Schwinn

- 33 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

Fitness, StairMaster, Trimline and Universal. Products sold by Nautilus under its brands include, at least, home gyms, free weights, benches, treadmills, treadclimbers, cycling equipment, steppers, elliptical trainers, fitness accessories, and sleep systems. On information and belief, Nautilus's pattern of false marking is pervasive and extends to many, if not all, of the foregoing Nautilus products and brands.

**B.      NAUTILUS FALSELY MARKED ITS PRODUCTS WITH AN INTENT TO DECEIVE THE PUBLIC, ITS COMPETITORS AND WOULD-BE DEVELOPERS OF RELATED MACHINE DESIGNS.**

48.      The publicly available facts demonstrate that Nautilus falsely marked its products with an intent to deceive the public, its competitors and would-be developers of related machine designs. As explained below, Nautilus has a long history of falsely marking its products and has been fined for doing so. In addition, Nautilus's frequent use of protective litigation of its patents demonstrates that it knows what its patents cover and when they expire. Furthermore, Nautilus's transactions dealing with its patents, such as loan collateralization, patent acquisitions, patent assignments, and payment/non-payment of maintenance fees demonstrate that Nautilus knows what its patents cover and when they expire. Nautilus's intent to deceive the public, its competitors and would-be developers of related machine designs by false marking can also be inferred from its knowledge regarding the scope and expiration of its patents and its repeated assertions that its patents are vital to its ability to compete in and dominate the marketplace. As the Federal Circuit has held, "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (internal quotations omitted). Further,

- 34 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

"the inference of intent to deceive cannot be defeated with blind assertions of good faith where the patentee has knowledge of mismarking." *Id.*, at 1353, n.2.

### 1. Nautilus is well aware of the false marking statute and has a long history of falsely marking its products.

49. In 2006, as described above, Nautilus was fined $325,000 under 35 U.S.C. § 292 for false marking violations for over a decade regarding its Bowflex machines. *Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, 2006 U.S. Dist. LEXIS 24153 (D. Utah Mar. 23, 2006). Nautilus intentionally misled the public, its competitors and would-be developers of related machine designs by using false statements indicating that its "Power Rods," a core component of the Bowflex machine, are patented or are manufactured with patented technology. The Icon jury unanimously found that "Nautilus had promoted an unpatented article . . . as patented and that Nautilus did so with the *purpose of deceiving the public*." *Id.* at *8 (emphasis added). And the court imposed the maximum penalty of $325,000 for 650 separate false marking offenses. The fact that Nautilus continued falsely marking its products despite the outcome of the *Icon Health* case is compelling evidence that Nautilus did so with an intent to deceive.

### 2. Nautilus patent litigation demonstrates that Nautilus knows what its patents cover and when they expire.

50. The fact that Nautilus has a history of aggressively enforcing its patents, through the use of litigation, demonstrates that Nautilus is well aware of when its patents expire and what they cover. Since 1980, Nautilus has sued its competitors for alleged patent infringement of patents directed to weight lifting exercise machines and parts, weight lifting exercise machines for the lower back, stationary exercise machines simulating running and stepping motions, rod-based exercise machines, clutch mechanisms for use on exercise bicycles, apparatus and methods for exercising the abductor or adductor muscles, apparatus and methods

- 35 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  for exercising torso rotation muscles, and apparatus and methods for weight

2  selection. Nautilus has even sued its competitors for alleged patent infringement of

3  design patents for adjustable dumbbell and adjustable dumbbell base. In short,

4  Nautilus's litigation history demonstrates that it is well aware of what its patents

5  cover and when they expire.

6      51.  Notably, among the patents Nautilus has litigated are the following

7  expired patents: U.S. Patent Nos. 3,858,873, 3,998,454; 4,456,245; 4,478,411; and

8  4,500,089. All of these expired patents are falsely marked on 2006 Nitro Plus

9  models of Biceps Curl, Lower Back, Abdominal, Leg Extension, Seated Leg Curl,

10  Gravitron Chin/Dip, Hip Abduction/Hip Adduction, Rear Delt/Pec Fly, Incline

11  Press, Overhead Press, Vertical Chest, Lateral Raise, Pullover, and Triceps

12  Extension.

13      52.  In addition to illustrating Nautilus's knowledge of the expiration date

14  and scope of the patents, Nautilus's litigation history demonstrates that it actively

15  uses its patents to threaten its competitors from entering the market. It can be

16  inferred that Nautilus falsely marked its machines with the motive of deterring

17  competitors from introducing competitive products.

18      **3.    Nautilus transactions demonstrate that Nautilus knows what**

19          **its patents cover and when they expire.**

20      53.  Nautilus has engaged in numerous transactions that would have led it

21  to investigate the scope and expiration dates of its patents. These transactions

22  include purchase of intellectual property, assignment of its patents, and

23  payment/non-payment of maintenance fees.

24      54.  Nautilus has knowledge of the scope and expiration dates of its patents

25  as demonstrated by, among other things, the acquisition of Nautilus International,

26  Inc. In January 1999, Nautilus, then doing business as Direct Focus, Inc., acquired

27  substantially all of the assets of Nautilus International, Inc., including all

28  intellectual property rights to the Nautilus name and products. Nautilus paid

- 36 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  approximately $16.2 million and assumed $2.6 million in liabilities. Nautilus must

2  have obtained knowledge through its due diligence in purchasing assets of Nautilus

3  International, Inc. regarding the scope and expiration dates of its patents.

4      55.   Nautilus also has knowledge of the scope and expiration dates of its

5  patents as demonstrated by, among other things, the acquisition of StairMaster

6  Sports/Medical, Inc. ("StairMaster"). In February 2002, Nautilus, then doing

7  business as The Nautilus Group, Inc., acquired the assets of StairMaster for $24.1

8  million. Nautilus must have obtained knowledge through its due diligence in

9  purchasing assets of StairMaster regarding the scope and expiration dates of its

10  patents.

11      56.   Nautilus also has knowledge of the scope and expiration dates of its

12  patents as demonstrated by, among other things, assignments of its patents. Each

13  expired patent on Nitro Plus models was assigned numerous times. U.S. Patent No.

14  5,810,696 was assigned four times. U.S. Patent Nos. 3,858,873; 3,998,454; and

15  4,600,196 were each assigned six times. U.S. Patent Nos. 4,493,485 and 4,666,152

16  were each assigned eight times. U.S. Patent Nos. 4,257,592, 4,511,137, and

17  4,733,860 were each assigned nine times. And U.S. Patent Nos. 4,387,893;

18  4,456,245; 4,478,411; 4,500,089; and 4,589,656 were each assigned 11 times. Each

19  of these patents, except U.S. Patent Nos. 4,733,860 and 5,810,696, was twice

20  assigned as security interest: first on April 16, 1987 to Meritor Savings Bank, and

21  then on August 20, 1990 to First National Bank of Louisville. U.S. Patent

22  4,733,860 was assigned as security interest on August 20, 1990 to First National

23  Bank of Louisville. Each expired patent on Nautilus Commercial Series elliptical

24  trainers, E916 and EV916, and StairMaster StepMill 7000PT trainers was also

25  assigned numerous times. U.S. Patent No. 5,290,205 was assigned seven times.

26  U.S. Patent Nos. 5,060,938 and 5,380,258 were each assigned eight times. And

27  U.S. Patent No. 4,687,195 was assigned nine times. Furthermore, U.S. Patent No.

28  5,312,313, which does not cover the elliptical trainers or StepMill, was assigned ten

- 37 -

times. Each of these patents was assigned as security interest by StairMaster before acquisition by Nautilus. U.S. Patent Nos. 4,687,195; 5,060,938; 5,312,313; and 5,380,258 were assigned as security interest on September 5, 1997 to ABN AMRO Bank N.V. And U.S. Patent No. 5,290,205 patent was assigned as security interest on December 16, 1999 to ABN AMRO Bank N.V.

57. The fact that Nautilus is very keenly aware of when its patents expire is further demonstrated by its actions in connection with securing a $100,000,000 line of credit. In that 2008 transaction, with Bank of America acting as the agent, Nautilus collateralized the loan with, among other things, all of its *unexpired* patents. As part of the transaction, Nautilus assigned these *unexpired* patents as collateral for the loan. Notably absent from the assignment are the *expired* patents, plainly showing that Nautilus is very well aware of which of its patents have already expired. Nautilus's actions in the context of applying for and securing this massive line of credit constitute substantial evidence that Nautilus manipulates its patent portfolio for its own purposes and for the intent of deceiving others.

58. Nautilus also has knowledge of the scope and expiration dates of its patents as demonstrated by, among other things, the payment of maintenance fees. Facts suggest that Nautilus takes an active role in determining whether to let patents expire for non-payment of maintenance fees. As detailed below, Nautilus has allowed some of its patents to expire for non-payment by not paying the maintenance fees through the duration of the patents. Thus, it appears that Nautilus has decided that some of its patents are not worth the investment of maintenance fees, and in deciding whether to pay maintenance fees on its patents, Nautilus would have examined both the scope and expiration date of the patents.

59. Nautilus has paid every maintenance fee for the following patents: the 12th year fee for U.S. Patent No. 4,456,245 was paid on January, 16, 1996; the 12th year fee for U.S. Patent No. 4,478,411 was paid on April 12, 1996; the 12th year fee for U.S. Patent No. 4,493,485 was paid on July 8, 1996; the 12th year fee for

- 38 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

U.S. Patent 4,500,089 was paid on July 25, 1996; the 12th year fee for U.S. Patent No. 4,589,656 was paid on November 10, 1997; the 12th year fee for U.S. Patent No. 4,666,152 was paid on November 9, 1998; the 12th year fee for U.S. Patent No. 4,687,195 was paid on February 17, 1999; and the 12th year fee for U.S. Patent No. 4,733,860 was paid on September 22, 1999.

60.   Nautilus has allowed the following patents to expire for non-payment of maintenance fees: U.S. Patent No. 4,387,893 expired on June 14, 1995 for non-payment; U.S. Patent No. 4,511,137 expired on April 16, 1997 for nonpayment; U.S. Patent No. 4,600,196 expired on July 15, 1994 for non-payment; U.S. Patent No. 5,060,938 expired on October 29, 2003 for non-payment; U.S. Patent No. 5,290,205 expired on March 1, 2002 for non-payment; U.S. Patent No. 5,380,258 expired on January 10, 2003 for non-payment; and U.S. Patent No. 5,810,696 expired on September 22, 2006 for non-payment.

### 4.   <u>Nautilus public filings demonstrate motive and other facts showing Nautilus's intent to deceive the public, its competitors and would-be developers of related machine designs.</u>

61.   The motive for Nautilus to continue with this deceptive, reckless and illegal conduct can be seen from Nautilus SEC filings, which clearly discuss how the expiration and limited scope of Nautilus's patents threaten Nautilus's ability to compete in the market.

62.   Nautilus SEC filings repeatedly emphasize the importance of its intellectual property portfolio and specifically refer to the business threat posed by the expiration of its patents.

63.   On April 13, 1999, Nautilus made the following statements in its filing with the Securities and Exchange Commission on Form S-1/A:

- "Protecting our intellectual property is an important factor in maintaining our competitive position in the fitness and mattress industries. If we do

- 39 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

not or are unable to adequately protect our intellectual property, our sales and profitability could be adversely affected."

- "We believe that our intellectual property is an important factor in maintaining our competitive position in the fitness and mattress industries. Accordingly, we have taken the following steps to protect our intellectual property: We hold 17 United States patents and have applied for three additional United States patents with respect to our Nautilus products; We hold four patents relating to our Bowflex home fitness equipment; We have applied for one patent relating to our airbeds."

- "Of our four Bowflex patents, the most important covers our Power Rods. This patent expires on April 27, 2004. The other three patents expire on February 16, 2005, April 14, 2007, and January 4, 2010."

64.    In its 2002 Form 10-K, Nautilus stated:

- "Management believes all patents are important to the Company strategy and has identified the patents on the Bowflex Power Rod resistance technology and TreadClimber as the most significant to our business."

- "[T]he main U.S. patent on our Bowflex Power Rod resistance technology expires on April 27, 2004."

- "This expiration of our patents could trigger the introduction of similar products by competitors."

65.    Similarly, in its March 15, 2004 filing with the Securities and Exchange Commission on Form 10-K, Nautilus made the following statements:

- "We believe all patents are important to our strategy."

- "[T]he main U.S. patent on our Bowflex Power Rod resistance technology expires on April 27, 2004."

- "The expiration of our patents could trigger the introduction of similar products by competitors."

-40-

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

66. More recently, in its March 8, 2010 filing with the Securities and Exchange Commission on Form 10-K, Nautilus stated:

"We own a broad array of patents and patent rights, both issued and pending, covering our fitness equipment. These patents cover a variety of technologies, some of which are utilized in the following products: TreadClimber™; variable stride ellipticals; selectorized weights; recumbent bicycles; and the Bowflex™ Revolution™. Patent protection for these technologies extends as far as 2020, with none expiring prior to 2011. Expiration of these and other patents could trigger the introduction of similar products by our competitors. Patent protection has ended for our rod-based home gyms."

67. Nautilus's intent to deceive can also be inferred from its statements. Nautilus has admitted that it uses its patents to prevent entry of its competitors. For example, in its March 16, 2009 filing with the Securities and Exchange Commission on Form 10-K, Nautilus stated:

- "Trademarks, patents and other forms of intellectual property are vital to the success of our business and an essential factor in maintaining our competitive position in the health and fitness industry."

- "Building our intellectual property portfolio is an important factor in maintaining our competitive position in the health and fitness equipment industry. We have followed a policy of filing applications for U.S. and foreign patents on inventions, new designs and improvements that we deem valuable to our business. We protect our proprietary rights vigorously and take prompt, reasonable actions to prevent counterfeit reproductions or other infringement on our intellectual property."

- "Protecting our intellectual property is an essential factor in maintaining our competitive position in the health and fitness industry. If we do not, or are unable to, adequately protect our intellectual property, other parties

- 41 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

might use our technology to market their products, which could have a material adverse impact on our sales, profitability and cash flows."

- "There are limited technological, manufacturing or marketing barriers to entry into the fitness equipment markets in which we compete. Like many companies in the industry, we have sought and received patent and trademark protection on our products in an effort to protect our competitive position."

68.     Nautilus has consistently asserted the importance of its patents in its 10-K forms:

- "Building our intellectual property portfolio is an important factor in maintaining our competitive position in the fitness and mattress industries. If we do not or are unable to adequately protect our intellectual property, our sales and profitability could be adversely affected. We are very protective of these proprietary rights and take action to prevent counterfeit reproductions or other infringing products." (2002-2004)

- "Building our intellectual property portfolio is an important factor in maintaining our competitive position in the fitness equipment and apparel industries. If we do not, or are unable to, adequately protect our intellectual property, our sales and profitability could be adversely affected. We are very protective of these proprietary rights and take action to prevent counterfeit reproductions or other infringing products." (2005)

- "Building our intellectual property portfolio is an important factor in maintaining our competitive position in the fitness equipment and apparel industries. We have followed a policy of filing applications for the U.S. and foreign patents on inventions, new designs and improvements that we deem valuable to our business. If we do not, or are unable to, adequately

- 42 -

protect our intellectual property, our sales and profitability could be materially adversely affected. We protect our proprietary rights vigorously and take prompt action to prevent counterfeit reproductions of or other infringing on our intellectual property." (2006-2007)

- "Building our intellectual property portfolio is an important factor in maintaining our competitive position in the health and fitness equipment industry. We have followed a policy of filing applications for U.S. and foreign patents on inventions, new designs and improvements that we deem valuable to our business. If we do not, or are unable to, adequately protect our intellectual property, other parties might use our technology to market their products, which could have a material adverse impact on our sales, profitability and cash flows. We protect our proprietary rights vigorously and take prompt, reasonable action to prevent counterfeit reproductions of or other infringement on our intellectual property." (2008)

- "Protecting our intellectual property is an important factor in maintaining our competitive position in the fitness and mattress industries. If we do not, or are unable to, adequately protect our intellectual property, our sales and profitability could be adversely affected. Accordingly, we have taken the following protective measures: We hold 17 United States patents and have applied for three additional United States patents with respect to our Nautilus products; We hold 20 United States patents and have 25 applications pending internationally with respect to our Schwinn Fitness products; We hold four patents relating to our Bowflex home fitness equipment; We have applied for one patent relating to our Nautilus Sleep Systems." (2001)

- "Protecting our intellectual property is an essential factor in maintaining our competitive position in the heath and fitness industries. If we do not

- 43 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

or are unable to adequately protect our intellectual property, our sales and profitability could be adversely affected. We currently hold a number of patents and trademarks and have several patent and trademark applications pending." (2002-2007)

- "Protecting our intellectual property is an essential factor in maintaining our competitive position in the health and fitness industry. If we do not, or are unable to, adequately protect our intellectual property, our sales and profitability may be adversely affected. We currently hold approximately 115 patents and trademarks and have approximately 65 patent and trademark applications pending in the United States." (2008)

69.   From the above declarations and statements, it is clear that Nautilus uses its patents to prevent entry of its competitors into the market. Given the "limited technical, manufacturing or marketing barriers to entry," it can be inferred that Nautilus had the motive to deter its competitors from entry by falsely marking its machines with many expired and non-applicable patents.

70.   Nautilus has marked its equipment with, and used in advertising, marketing and promotional media, expired patents and patents that do not cover the marked or referenced products in violation of 35 U.S.C. § 292. Despite clear knowledge of this violation, it continues to do so.

71.   Upon information and belief, Nautilus's sales of its falsely marked exercise machines are substantial.

72.   Upon information and belief, Nautilus falsely marked products in an attempt to prevent competitors, Sukumar, and SCSRA from designing, using, and/or selling competing products.

73.   Upon information and belief, Nautilus falsely marked its products for the purpose of deceiving the public, competitors, Sukumar, and SCSRA into believing that something contained in or embodied in Nautilus products was covered by the falsely marked patents.

- 44 -

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

74. Nautilus has wrongfully, and with deceptive intent, conveyed to the public and to its competitors that it maintains patent rights that it does not possess, and as a result, Nautilus has benefited commercially and financially through false marking of patent rights.

75. Sukumar and SCSRA seek an award against Nautilus in the maximum amount allowed by law pursuant to 35 U.S.C. § 292, as well as compensatory damages for the injuries that they have incurred as a result of Nautilus's conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Sukumar and SCSRA request the Court to enter judgment for them against Nautilus as follows:

1. Decree that Nautilus has falsely marked products in violation of 35 U.S.C. § 292;

2. Pursuant to 35 U.S.C. § 292, an award against Nautilus in the form of a civil monetary fine for each and every false marking "offense";

3. Recovery adequate to compensate for the injuries that Sukumar and SCSRA have suffered because of Nautilus's false marking;

4. An accounting for any falsely marked Nautilus product not otherwise included herein and an award by the Court of additional sums for any such falsely marked products; and

5. Such other and further relief, at law or in equity, to which Sukumar and SCSRA are justly entitled.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 45 -

DATED: October 20, 2010

HILL FARRER & BURRILL LLP

By: _____

Stephen J. Tomasulo
Attorneys for Plaintiffs, PONANI
SUKUMAR and SOUTHERN
CALIFORNIA STROKE
REHABILITATION ASSOCIATES,
INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 46 -

COMPLAINT FOR FALSE MARKING

1

## JURY TRIAL DEMANDED

2      Pursuant to Fed. R. Civ. 38(b), Plaintiffs Ponani Sukumar and Southern

3 California Stroke Rehabilitation Associates, Inc. hereby demand a trial by jury on

4 all matters and issues triable by jury.

5

6 DATED: October 20, 2010      HILL FARRER & BURRILL LLP

7

8               By: _____

9                 Stephen J. Tomasulo
                Attorneys for Plaintiffs, PONANI

10                 SUKUMAR and SOUTHERN
                CALIFORNIA STROKE

11                 REHABILITATION ASSOCIATES,
                INC.

12

13 HFB 994260.1 S9077001

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

- 47 -

COMPLAINT FOR FALSE MARKING

Stephen J. Tomasulo (SBN 181013)
Hill Farrer & Burrill LLP
300 South Grand Avenue, 37th Floor
Los Angeles, CA 90071
Telephone: 213-621-0882
Email: stomasulo@hillfarrer.com
Attorneys for Plaintiffs PONANI SUKUMAR and
SOUTHERN CALIFORNIA STROKE
REHABILITATION ASSOCIATES, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PONANI SUKUMAR, an individual, and SOUTHERN CALIFORNIA STROKE REHABILITATION ASSOCIATES, INC., a California corporation,<br><div align="right">PLAINTIFF(S)</div><br>V. | CASE NUMBER<br><br>**CV10-7930** omg (R24) |
| NAUTILUS, INC., a Washington corporation,<br><div align="right">DEFENDANT(S).</div> | **SUMMONS** |

TO:DEFENDANT(S): _____

A lawsuit has been filed against you.

Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Stephen J. Tomasulo</u>, whose address is <u>300 South Grand Avenue, 37th Floor, Los Angeles, CA 90071</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____10-21-10_____

By: **TANYA DURANT**

Deputy Clerk

*(Seal of the Court)*   1188

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

American LegalNet, Inc.
www.USCourtForms.com

Stephen J. Tomasulo (SBN 181013)
Hill Farrer & Burrill LLP
300 South Grand Avenue, 37th Floor
Los Angeles, CA 90071
Telephone: 213-621-0882
Email: stomasulo@hillfarrer.com
Attorneys for Plaintiffs PONANI SUKUMAR and
SOUTHERN CALIFORNIA STROKE
REHABILITATION ASSOCIATES, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PONANI SUKUMAR, an individual, and SOUTHERN CALIFORNIA STROKE REHABILITATION ASSOCIATES, INC., a California corporation, <br> PLAINTIFF(S) <br><br> v. <br><br> NAUTILUS, INC., a Washington corporation, <br> DEFENDANT(S). | CASE NUMBER <br><br> CV10-7930 (RZx) DMG <br><br><br> **SUMMONS** |

TO:DEFENDANT(S): _____

A lawsuit has been filed against you.

Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Stephen J. Tomasulo</u>, whose address is <u>300 South Grand Avenue, 37th Floor, Los Angeles, CA 90071</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___10-21-10___

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                   SUMMONS
American LegalNet, Inc.
www.USCourtForms.com
Case 7:11-cv-00218-JCT   Document 1   Filed 10/21/10   Page 49 of 52   PageID#: 49

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV10- 7930 DMG (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
PONANI SUKUMAR, an individual, and SOUTHERN CALIFORNIA STROKE REHABILITATION ASSOCIATES, INC., a California corporation

**DEFENDANTS**
NAUTILUS, INC., a Washington corportion

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Stephen J. Tomasulo (SBN 181013)
HILL FARRER & BURRILL LLP
300 South Grand Ave., 37th Floor
Los Angeles, CA 90071
Tel: 213-621-0882; Email: stomasulo@hillfarrer.com

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No
☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §§ 1331 and 1338, and 35 U.S.C. § 292(b)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| | | | | | |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | ☐ 22 Appeal 28 USC 158 | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | | ☐ 555 Prison Condition | ☐ 820 Copyrights |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☒ 830 Patent |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 61 HIA(1395ff) |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | ☐ 862 Black Lung (923) |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities — Employment | ☐ 630 Liquor Laws | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 891 Agricultural Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities — Other | ☐ 640 R.R.& Truck | ☐ 864 SSID Title XVI |
| ☐ 892 Economic Stabilization Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 865 RSI (405(g)) |
| ☐ 893 Environmental Matters | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 894 Energy Allocation Act | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 895 Freedom of Info. Act | ☐ 245 Tort Product Liability | | | | |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 290 All Other Real Property | | | | |
| ☐ 950 Constitutionality of State Statutes | | | | | |

CV10-7930

**FOR OFFICE USE ONLY:** Case Number: _____
AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)

CIVIL COVER SHEET

Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)
- ☐ A. Arise from the same or closely related transactions, happenings, or events; or
- ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
- ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
- ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Washington |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date October 20, 2010

Stephen J. Tomasulo

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com