CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 19 2011

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| PONANI SUKUMAR, | ) | Case No.: 7:11-cv-00218 |
| and | ) | |
| SOUTHERN CALIFORNIA | ) | |
| STROKE REHABILITATION | ) | **MEMORANDUM OPINION** |
| ASSOCIATES, INC., | ) | **AND ORDER** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **By: James C. Turk** |
| | ) | **Senior United States District Judge** |
| NAUTILUS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant Nautilus, Inc. ("Nautilus" or "Defendant")'s

Partial Motion to Dismiss (ECF No. 70). Plaintiffs Ponani Sukumar ("Sukumar") and Southern

California Stroke Rehabilitation Associates, Inc. ("SCSRA") (collectively, "Plaintiffs") have filed

an Opposition (ECF No. 77), to which Nautilus has replied (ECF No. 84). Oral argument was

held on December 6, 2011, and the matter is now ripe for decision. For the reasons set forth

below, Nautilus's Partial Motion to Dismiss is **DENIED.**

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This case, although still in its early stages, has already amassed a significant procedural

history. Sukumar and SCSRA originally filed a Complaint against Nautilus in the Central

District of California, accusing it of falsely marking a number of products in contravention of 35

U.S.C. § 292 ("Section 292"). *See* Compl., Oct. 20, 2011, ECF No. 1. On Nautilus's motion

(ECF No. 20), the case was subsequently transferred to this District. *See* Ord. Re Def's Mot. to

Transfer, May 9, 2011, ECF No. 34. On June 3, 2011, Nautilus filed a motion to stay these

proceedings. In support of its motion, Nautilus argued that a case determining the constitutionality of Section 292 was pending before the Federal Circuit, and that legislation which would affect the outcome of this case was pending in Congress. *See* Def.'s Mot. to Stay, June 3, 2011, ECF No. 51. The Court agreed with Nautilus that a stay was appropriate in this case, and on June 30, 2011, ordered that the proceedings be stayed until the earlier of (1) 180 days from the date of the order; (2) Section 292 was amended by legislative act; or (3) the Federal Circuit ruled on Section 292's constitutionality.

On September 16, 2011, President Obama signed into law the Leahy-Smith America Invents Act, Pub. L. 112-29, 125 Stat. 284 (2011) ("America Invents Act"), which, *inter alia*, amended Section 292 to eliminate the *qui tam* provisions and institute a "competitive injury" requirement for false marking suits. The Court subsequently lifted its litigation stay. Ord. Lifting Stay, Sept. 19, 2011, ECF No. 68. In light of the changes in the law, Sukumar and SCSRA filed a First Amended Complaint ("FAC"). In the FAC, Plaintiffs modified their Section 292 claim to allege bad faith on the part of Nautilus and explicitly allege that they suffered a competitive injury as a result of Nautilus's false marking. They also brought forth three additional state law claims: false advertising in violation of California law, unfair competition in violation of California law, and unfair competition in violation of Washington law. Nautilus responded with the instant Partial Motion to Dismiss, arguing that the state law claims are preempted by federal law and accordingly fail to state claims upon which relief can be granted.[1]

---

[1] Nautilus also initially filed a Motion to Strike those portions of the FAC that dealt with expired patents, arguing that expired patents were no longer actionable in light of the America Invents Act (ECF No. 71). It later withdrew that motion (ECF No. 75). Nonetheless, Nautilus raised the issue of expired patents in its papers relating to this motion and again at oral argument. *See* Def.'s Partial Mot. to Dismiss at 25–26; Tr. at 27. However, Plaintiffs' counsel assured the Court that Plaintiffs only planned to use the expired patents as evidence of Nautilus's state of mind, and were not seeking relief on the basis of expired patent numbers. *See* Tr. at 30–31 ("So to the extent that our complaint implies that we're seeking relief on [the

2

## II. STANDARD OF REVIEW

A complaint must include a short and plain statement of the claim under which the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Under the notice pleading standard employed by the federal courts, the complaint need only "give the defendant notice of what the claim is . . . and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true all of the complaint's factual allegations and take the facts in the light most favorable to the plaintiff. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In order to survive a motion to dismiss, however, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl., 550 U.S. at 555. Where state law claims are preempted by federal law, they necessarily fail to "state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), and must be dismissed. *See generally* Anderson v. Sara Lee Corp., 508 F.3d 181, 190 (4th Cir. 2007) (affirming district court's dismissal of state law claims on preemption grounds where challenged under Rule 12(b)(6)).

## III. DISCUSSION

### A. The State Law Claims

At issue here are three state law claims: (1) unfair/unlawful business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200–17209 (West

---

basis of expired patents], that's something that we're going to take steps to correct."). Accordingly, the Court proceeds in its analysis with the understanding that the Plaintiffs' claims for liability do not rest upon expired patents.

2008)[2]; (2) false advertising in violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 (West 2008); and (3) unfair competition in violation of the Washington State Consumer Protection Act, Wash Rev. Code §19.86.020 (2010).

## 1. California Unfair Competition Law and False Advertising Law

The California Unfair Competition Law ("UCL") covers five types of wrongs: (1) an unlawful business act or practice; (2) an unfair business act or practice; (3) a fraudulent business act or practice; (4) unfair, deceptive, untrue, or misleading advertising; and (5) any act prohibited by certain other statutes, including the False Advertising Law. Cal. Bus. & Prof. Code § 17200 (West 2008). Its purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 320 (2011) (quoting Kasky v. Nike, Inc., 45 P.3d 243, 249 (Cal. 2002)). Until 2004, the UCL had an extraordinarily permissive standing requirement—anyone could sue on behalf of the general public. See Cal. Bus. & Prof. Code § 17204 (West 1997); Baxter v. Salutary Sportsclubs, Inc. 19 Cal. Rptr.3d 317, 323 (Cal. Ct. App. 2004). In November 2004, California voters passed Proposition 64, which created a heightened standing requirement for private actions under the UCL.[3]

---

[2] The California legislature has not conferred an official name on these sections of the Business and Professions Code, and courts have referred to them by various names. However, the California Supreme Court has decided to term them, collectively, the "Unfair Competition Law," Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal. 4th 553, 558 & n.2 (1998), and this Court will adhere to that nomenclature.

[3] Proposition 64 was passed largely in response to significant publicity about a number of attorneys who utilized the UCL as a vehicle to extract small settlements from hundreds of small businesses accused of relatively minor violations of the law. See Lisa Muñoz, Whom Will Initiative Suit Best? Measure that Would Restrict Consumers' Ability to Sue Stirs Strong Emotions, Orange Cnty. Register, Aug. 4, 2004; David Reyes, Business Owners Rally Around Incentive to Limit Lawsuits, L.A. Times, Orange County Ed., Sept. 16, 2004, at B3 (business owners describing "shakedown" lawsuits); Proposition 64; Restriction on Lawsuits, L.A. Times, Oct. 31, 2004 at B16 (outlining arguments for and against Proposition 64). See also Goddard Claussen Pub. Affairs, Paralegal, YOUTUBE (posted Jun. 5, 2010), http://www.youtube.com/watch?v=BwCgeFmMNvY (television commercial in favor of Proposition 64).

4

The False Advertising Law prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500 (West 2008). The UCL and the False Advertising Law are closely related and in some ways intricately intertwined. They share several elements, Kasky, 45 P.3d at 250; carry the same standing requirement, Morgan v. AT&T Wireless Svcs., 177 Cal.App. 4th 1235, 1259 (Cal. Ct. App. 2009)); and a violation of the False Advertising Law is necessarily a violation of the UCL. Kasky, 45 P.3d at 250. Here, Plaintiffs allege that by affixing patent labels to its products that contained false information, Nautilus violated both the UCL and the False Advertising Law. *See* FAC ¶¶ 80–94.

## 2. **Washington Consumer Protection Act**

The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020 (2010) ("CPA"), requires a successful plaintiff to show: "(i) an unfair or deceptive act or practice; (ii) occurring in the conduct of trade or commerce; (iii) affecting the public interest; (iv) which causes; (v) injury to plaintiff's business or property." Goel v. Jain, 259 F.Supp.2d 1128, 1142 (W.D. Wash. 2003) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 535 (Wash. 1986)). According to the Washington legislature, the purpose of the CPA is to "complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." Wash. Rev. Code § 19.86.920 (2010). Plaintiffs here allege that Nautilus's false labeling constitutes an unfair or deceptive act or practice that affected the public interest by stifling competition, deterring innovation, and causing consumers to pay higher prices for products. FAC ¶¶ 99–100.

These three state law causes of action—the California Unfair Competition Law, California False Advertising Law, and Washington Consumer Protection Act—are very similar

in character. As discussed below, they are all consumer protection laws, and although they may have important differences, they can be treated similarly for the Court's limited purpose of determining whether they are preempted by federal false marking law.[4]

## B. The General Presumption Against Preemption

Under the Supremacy Clause, federal statutes are part of "the supreme law of the land." U.S. Const. Art. VI, cl. 2. A long-standing principle of our jurisprudence teaches that, where there is a clash between state and federal laws, federal law prevails. Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992). However, the dictates of the Supremacy Clause must be balanced with the overarching notion that ours is a federal, and not a unitary, system of government. Our federal government is one of enumerated powers. *See* United States v. Morrison, 529 U.S. 598, 608 (2000). Thus, under the American constitutional design, each of the states retains its own sovereignty, which cannot be effortlessly overrun by each and every federal mandate. In deference to this sovereign status, courts have "long presumed that Congress does not cavalierly pre-empt state-law causes of action." Meditronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). As noted above, the state law claims at issue here are consumer protection laws. Such laws have historically fallen into the purview of the states' broad police powers, to which the courts have afforded special solemnity. *See* California v. ARC Am. Corp., 490 U.S. 93, 101 (1989) (describing unfair business practices as "an area traditionally regulated by the States"); Aguayo v. U.S. Bank, 653 F.3d 912, 917 (9th Cir. 2011) (". . . [UCL] claims, rooted in California's consumer-protection laws, fall in an area that is traditionally within the state's police powers to protect its own citizens"); Greenwood Trust Co. v. Massachusetts, 971 F.2d 818, 828

---

[4] The parties seem to agree. Both sides, at least on the preemption issue, do not appear to distinguish their arguments on the basis of differences in the state laws. Instead, they treat the matter of "the state law claims" as a single question. *See, e.g.,* Def.'s Partial Mot. to Dismiss at 13–26; Pls.' Opp. at 4–15.

6

(1st Cir. 1992) (describing consumer protection laws as within "the range of subjects over which the states have traditionally exercised their police powers."). In such cases, a reviewing court should "start with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). *See also* Gen. Motors Corp. v. Abrams, 897 F.2d 34, 41–42 (2d Cir. 1990) ("Because consumer protection law is a field traditionally regulated by the states, compelling evidence of an intention to preempt is required in this area."). Finally, in determining the preemptive scope of a federal enactment, a court should recall that "the purpose of Congress is the ultimate touchstone in every pre-emption case." Meditronic, 518 U.S. at 485 (internal quotation marks omitted) (quoting Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn, 375 U.S. 96, 103 (1963)). With these principles in mind, the Court now turns to an analysis of the preemption issues before it.

## C. Express Preemption

The Supreme Court has recognized three kinds of preemption: express, field, and conflict. English v. Gen. Elec. Co., 496 U.S. 72, 78–79 (1990).[5] Express preemption occurs when a federal enactment explicitly provides that it is intended to preempt state laws. Where a court finds express preemption in the statutory text, its analysis must end there. Gade v. Nat'l Solid Wastes Mgmt. Assn., 505 U.S. 88, 111 (1992) (Kennedy, J., concurring in part and concurring in the judgment) ("When the existence of pre-emption is evident from the statutory

---

[5] While the courts have traditionally pigeonholed preemption analysis into these three types, it is important to note at the outset that they are not entirely discrete categories. The Supreme Court has recognized as much: "By referring to these three categories [of preemption], we should not be taken to mean that they are rigidly distinct. Indeed, field pre-emption may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." English, 496 U.S. at 79 n.5.

7

text, our inquiry must begin and end with the statutory framework itself"). *But see* <u>Altria Grp.</u>, 555 U.S. at 543 ("If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains.").

Unfortunately for Nautilus, there is no express preemption to be found in the America Invents Act or in any other part of the Patent Act, *see* 35 U.S.C. §§ 1–376 (2006), and Nautilus wisely concedes the point. *See* Def.'s Partial Mot. to Dismiss at 11 & n.4. In the absence of express preemption, the Court must look further, and thus addresses Nautilus's field and conflict preemption arguments in turn.

### D. Field Preemption

A state law is also preempted "where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." <u>English</u>, 496 U.S. at 79. There are several places the Court may look to find evidence of such intent. The "scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." <u>Rice</u>, 331 U.S. at 230 (citations omitted). Or, a congressional act may relate to a field "in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* Finally, the Court might also determine that "the object sought to be obtained by the federal law and the character of the obligations imposed by it" reveals a Congressional intent to preempt. *Id.*

Nautilus argues that Congress's pervasive regulation of the entire area of patent law— including the original federal jurisdiction over patent law claims, the long-standing existence of federal restrictions on false marking, and the comprehensive nature of the America Invents Act—shows that Congress intended to fully occupy the field of false marking, rendering

8

ineffective any state law dealing with any aspect of that field. In support of this contention, Nautilus relies on Semiconductor Energy Lab. Co. v. Samsung Elecs. Co., 204 F.3d 1368 (Fed Cir. 2000). In Semiconductor Energy, Samsung brought forth, *inter alia*, counterclaims under the New Jersey Racketeer Influenced and Corrupt Organizations ("RICO") Act based on Semiconductor's inequitable conduct[6] before the United States Patent and Trademark Office ("PTO"). The court found that since Samsung's "New Jersey RICO counterclaims occup[ied] a field identical in scope with the inequitable conduct defense," allowing them to proceed would be "contrary to Congress' preemptive regulation in the area of patent law." Semiconductor Energy, 204 F.3d at 1382 (quoting Abbott Labs. v. Brennan, 952 F.2d 1346, 1357 (Fed. Cir. 1991)).[7] Similarly, in Abbott Labs. v. Brennan, an inventor accused Abbott Laboratories of wrongful conduct before the PTO. The court held that a state abuse of process claim would be "an inappropriate collateral intrusion on the regulatory procedures of the PTO," and was thus preempted under those circumstances. 952 F.2d at 1357.

Finally, Nautilus also notes several cases where the UCL has been preempted.[8] However, none of those cases deal with the false marking statute or patent law, and are thus of limited value to the Court here.

---

[6] "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense v. Becton, Dickinson & Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). It is most commonly committed "by intentional failures to submit material references to [a patent] examiner, or by making knowing false or misleading statements to the examiner, such that it can confidently be said that by deceitful intent the patent prosecution process has been subverted." Robert L. Harmon et al., PATENTS AND THE FEDERAL CIRCUIT § 12.5 (10th ed. 2011).

[7] While a bare reading of this quotation may lead one to believe that Congress intended to preempt the entire field of patent law *carte blanche*, as Nautilus seems to suggest, a fair reading of the context reveals that the court was discussing preemption only in the framework of a state cause of action which was predicated "squarely" on acts of inequitable conduct before the PTO. Semiconductor Energy, 204 F.3d at 1382.

[8] These cases include Wild v. NBC Universal, 788 F.Supp.2d 1083 (C.D. Cal. 2011) (UCL preempted by Copyright Act); In re Apple iPhone 3G Prod. Liab. Litig., 728 F.Supp.2d 1065 (N.D. Cal. 2010) (Federal

9

It is true that "[t]he patent grant is within the exclusive purview of federal law." Abbott

Labs., 952 F.2d at 1355 (citing Sears, Roebuck, & Co. v. Stiffel Co., 376 U.S. 225, 231 n.7

(1964)). But the Patent Act has never been interpreted as wholly upending the ability of the

states to regulate anything tangentially related to the issuance of a patent. Controlling precedent

makes it clear that "certain traditional state law claims may properly be raised when patent rights

are litigated." Abbott Labs, 952 F.2d at 1355–56 (citing Bonito Boats, Inc. v. Thundercraft

Boats, Inc., 489 U.S. 141, 154–56 (1989)).

In fact, Sukumar and SCSRA argue that the Federal Circuit has specifically held that

there is room for state unfair competition law in the patent context. In Hunter Douglas, Inc. v.

Harmonic Design, Inc., 153 F.3d 1318 (Fed. Cir. 1998), *overruled on other grounds*, Midwest

Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999), Hunter Douglas, a

motorized window shade manufacturer, brought suit against a competitor, seeking a declaratory

judgment that it was not infringing the competitor's patents, or in the alternative, the patents

were invalid or unenforceable.[9] 153 F.3d at 1321–22. Hunter Douglas also brought a number of

---

Communications Act); In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practices Litig., 601 F.Supp.2d 1201 (S.D. Cal. 2009) (Home Owners' Loan Act & National Bank Act); Johnson v. JP Morgan Chase Bank DBA Chase Manhattan, 536 F.Supp.2d 1207 (E.D. Cal. 2008) (RICO & Fair Debt Collection Practices Act); Silvas v. E*Trade Mortg. Corp., 421 F. Supp.2d 1315 (S.D. Cal. 2006) (Home Owners' Loan Act); Howard v. Blue Ridge Bank, 371 F.Supp.2d 1139 (N.D. Cal. 2005) (Fair Credit Reporting Act); In re Enron Corp., 328 B.R. 75 (Bkrtcy. S.D.N.Y. 2005) (Federal Power Act).

[9] Nautilus's reply brief rebukes the Plaintiffs for relying on Hunter Douglas because it has been overruled and is no longer good authority. This is a mischaracterization of the case. In Midwest Industries, the Federal Circuit overruled Hunter Douglas to the extent it held that the court was required to apply regional circuit law in determining whether federal patent law preempted state law. 175 F.3d at 1359–60 ("In order to fulfill our obligation of promoting uniformity in the field of patent law, it is equally important to apply our construction of patent law to the questions whether and to what extent patent law preempts or conflicts with other causes of action."). In Hunter Douglas, the court determined that the regional circuit law governing the trial court, the Ninth Circuit, did not "require any analytic process for assessment of preemption based on conflict with federal patent law." 153 F.3d at 1333. It then proceeded to apply Federal Circuit law to the preemption analysis. Thus, Hunter Douglas remains good law on the issues before the Court. *Accord* Spotless Enter., Inc. v. Carlisle Plastics, Inc., 56 F.Supp.2d 274, 284 n.10 (E.D.N.Y. 1999).

state law claims, including a claim for unfair competition under the UCL. Finding that "there is no reason to believe that the clear and manifest purpose of Congress was for federal patent law to occupy exclusively the field pertaining to state unfair competition law," the court concluded that "there is no field preemption of state unfair competition claims that rely on a substantial question of federal patent law." Hunter Douglas, 153 F.3d at 1333.

Nautilus also argues that the America Invents Act, signed into law in September, alters the Patent Act so substantially that it evinces the intent of Congress to completely occupy the field of false marking law. The Court remains unconvinced that the America Invents Act alters this analysis. First, although it did make changes to Section 292, false marking reform was not the new law's major objective. A co-sponsor of the Act described the Act's goals as threefold: "[(1)] improve the application process by transitioning to a first-inventor-to-file system; [(2)] improve the quality of patents issued by the USPTO by introducing several quality-enhancement measures; and [(3)] provide more certainty in litigation." 157 Cong. Rec. S131 (daily ed. Jan. 25, 2011) (statement of Sen. Leahy). Nautilus no doubt would seek to couch its argument in the third prong. But the "certainty" Senator Leahy spoke of largely focused on the implementation of a first-to-file patent system. By implementing a first-to-file system, as opposed to the existing "first to invent" regime, Congress sought to reduce the amount of litigation by increasing certainty over patent ownership. A review of the floor debates reveals that the first-to-file system was the most significant reform ushered in by the America Invents Act. *See, e.g.,* 157 Cong. Rec. H4421 (daily ed. Jun. 22, 2011) (statement of Rep. Kaptur) (arguing first-to-file is unconstitutional); 157 Cong. Rec. S936 (daily ed. Feb. 28, 2011) (statement of Sen. Hatch) ("If enacted, the American [sic] Invents Act would move the United States to a first-inventor-to-file system, which will create a system that is more transparent, objective, and predictable for the

11

patentee. In addition, transitioning to a first-to-inventor-to-file system will facilitate harmonization with other patent offices across the world and contribute to ongoing work-sharing processes."). *See also* House Comm. on the Judiciary, *America Invents Act of 2011*, http://judiciary.house.gov/issues/issues_patentreformact2011.html (last visited Dec. 15, 2011) (emphasizing importance of first-to-file reform).

The legislative record does reveal some discussion about false marking reform, but this debate centered mostly on eliminating the *qui tam* remedy. *See, e.g.,* 157 Cong. Rec. S5319 (daily ed. Sept. 6, 2011) (statement of Sen. Kyl) ("By repealing the false marking qui tam statute, the [America Invents Act] will allow American companies to spend money hiring new workers rather than fighting off frivolous false marking suits."). The most contentious issue with relation to false marking seems to have been whether the proposed amendments to Section 292 would be retroactive or prospective. *See, e.g.*, 157 Cong. Rec. S1545 (daily ed. Mar. 10, 2011) (statement of Sen. McCaskill); H.R. Rep. No. 112-98(I), at 163 (2011) (dissenting view of Ranking Member Conyers). Congress also noted its concern with the effect of the Federal Circuit's decision in Forest Grp., Inc. v. Bon Tool Co., 590 F.3d 1295 (2009), which affirmed the right of false marking plaintiffs to obtain the statutory penalty per article marked. *See* H.R. Rep. No. 112-98(I), at 53 (2011). However, a thorough review of the America Invents Act and its legislative history reveals no evidence that Congress sought to use the law to impose upon the traditional authority of the states to regulate areas of consumer protection.

On balance, the Court agrees with the Plaintiffs' position here. In Hunter Douglas, the question of patent law implicated by the state law claims centered on whether the patents obtained were valid and enforceable. *Id.* at 1322. The main question of patent law presented here, at least for purposes of this preemption analysis, is whether the patent numbers affixed to

12

Nautilus's products actually covered those products.[10] Under <u>Hunter Douglas</u>, and in light of the historical role of the states in the field of consumer protection, the Court cannot find that it was the "clear and manifest" purpose of Congress to occupy the entire field of false marking law to the exclusion of state unfair competition law, even after the America Invents Act. <u>Cal. Div. of Labor Standards v. Dillingham Const., N.A., Inc.</u>, 519 U.S. 316, 325 (1997) (internal quotation omitted).

### E. Conflict Preemption

A final type of preemption is conflict preemption, which is where state law is found to be preempted "to the extent that it actually conflicts with federal law" <u>English</u>, 496 U.S. at 79, or where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting <u>Hines v. Davidowitz</u>, 312 U.S. 52, 67 (1941)) (internal quotation marks omitted). The Federal Circuit has adopted an as-applied, "conduct-based" approach to conflict preemption. This approach teaches that courts should look to the nature of the conduct alleged in order "[t]o determine whether . . . state law torts are in conflict with federal patent law and accordingly preempted." <u>Hunter Douglas</u>, 153 F.3d at 1335. Accordingly, the Court will center its conflict preemption analysis on the specific conduct alleged by Sukumar and SCSRA.

### 1. Direct Conflict

---

[10] Nautilus goes out of its way to persuade the Court that this case is not about patent law, but just about false marking. However, elsewhere in its briefs, it advocates that the Court find field preemption based on Congress's overarching regulation in the area of general patent law. *Compare* Def.'s Rep. Mem. at 8 ("[T]he underlying purpose and benefits of 'patent law' in general to the people of this country are inapposite and irrelevant when it comes to whether Sukumar's attempt to use State-law claims to avoid the new, strict requirements of a false marking case, conflicts with the intent of Congress.") *and* Tr. at 23 ("I mean, these cases involve patent law generally [. . . .] That's not what we're dealing with here.") *with* Def.'s Partial Mot. to Dismiss at 13 ("There can be little doubt that Congress intended to pervasively regulate the entire field of patent law"). This seeming inconsistency illustrates a key point underlying the Court's view of this dispute. While this is a false marking case, it is clear that the wide body of precedent on "patent law generally" must, to some degree, inform the Court's analysis on the issues before it.

Where it is physically impossible to comply with both federal and state law, it is evident that federal law must prevail. Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142–43 (1963). That is not the case here. Nautilus does not claim that there is no way it could comply with both state and federal law. By contrast, Nautilus's direct conflict argument seems to boil down to this: because the state law claims have different elements and provide for different remedies than Section 292, as amended, they must be preempted. Nautilus highlights the fact that the State of California may seek $2,500 in civil penalties for each violation of its unfair competition law and the United States may only ask for $500 per violation under Section 292. But this does not preemption make.[11] As Plaintiffs point out, even before the advent of the America Invents Act, the state law torts had different elements and allowed different relief than the false marking law. *Compare* 35 U.S.C. § 292 (2006) *with* Cal. Bus. & Prof. Code §§17200–17209 (West 2008). Simply because the new Section 292 provides for different elements and relief than state law does not render the state law preempted. Much conduct is covered by federal and state law, and the federal government and several states concomitantly regulate many different areas of consumer protection. One example of this is in commodities law.[12] It violates both California and federal law to commit fraud in connection with the purchase or sale of commodities. The two laws are similar, but contain different elements. *Compare* Cal. Corp. Code § 29536 (West 2006) *with* 7 U.S.C.A. § 6o (West 2009). Moreover, the U.S. Commodity Futures Trading Commission is authorized to seek injunctive relief under federal law, *see* 7 U.S.C.A. § 13a–1 (West 2009), but California law only authorizes state officials to do so. Cal.

---

[11] Moreover, in keeping with the Federal Circuit's as-applied approach to preemption, this scenario is of limited relevance in this case, where the Plaintiffs are private actors.

[12] The Court uses this example only for illustrative purposes. Commodities law is not a perfectly analogous scenario to the present case, not least of which because the federal statute explicitly provides Congress's intent not to preempt similar state statutes. 7 U.S.C.A. §16(e) (West 2009).

14

Gov't Code § 12658 (West 2011). This difference in standing does not render the state law preempted. In fact, actions alleging fraud in the commodities trade are often brought jointly by federal and state authorities under both state and federal law. *See, e.g.*, CFTC v. Tech Trade Inst., Inc., No. 2:11-cv-02163-GHK-PLA (C.D. Cal. Mar. 15, 2011); CFTC v. Choi, No. SACV08-965 AG (SSx) (C.D. Cal. Aug. 27, 2008).

In fact, in other contexts, the Federal Circuit has reasoned that the very fact that state law had different elements than federal law was a reason *not* to preempt the state law. For example, in Rodine PLC v. Seagate Tech., 174 F.3d 1294 (Fed. Cir. 1999), Rodine alleged that Seagate had tried to dissuade other disk drive manufacturers from licensing Rodine's technology. *Id.* at 1306. Rodine brought claims against Seagate for, *inter alia*, state law tortious interference and unfair competition. *Id.* The court found that "the patent laws will not preempt such claims if they include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Id.* In sum, it is evident that the Plaintiffs' state law claims do not directly conflict with federal law.

### 2. Obstacle Preemption

Nautilus also asserts that bringing forth state law unfair competition claims would serve as an obstacle to Congress's intent in passing the America Invents Act, *i.e.* "eliminat[ing] litigation brought by unrelated, private third parties." Def.'s Rep. Mem. at 8, quoting Ex. B to Req. for Jud. Not. at 53. Nautilus also argues that Congress has expressly stated that it enacted false marking reforms in the America Invents Act "[t]o address the recent surge in litigation," and allowing the Plaintiffs to press state law claims in addition to those under Section 292 would be an obstacle to that stated objective by increasing, rather than limiting, false marking litigation.

15

As noted above, the Report of the Judiciary Committee does express an intent to replace the *qui tam* remedy for false marking and reduce the number of suits by instituting a competitive injury requirement. But the "recent surge in litigation" cited by Nautilus refers to the recent surge of *qui tam* cases brought on the basis of expired patents. *See* H.R. Rep. No. 112-98(I) at 53 (2011), That is not the case here. Plaintiffs cannot be deemed to be "unrelated, private third parties." By contrast, Plaintiffs claim to be competitors of Nautilus who were deterred from designing certain rehabilitation equipment because of Nautilus's false marking. FAC ¶¶ 24–38.[13] Moreover, they do not seek to base liability on expired patents. *See supra* note 1.

Nautilus places heavy emphasis on <u>Xerox Corp. v. Apple Computer, Inc.</u>, 734 F.Supp. 1542 (N.D. Cal. 1990). The <u>Xerox</u> court held that Xerox's UCL claim was preempted by the federal Copyright Act of 1976 because the "essence" of Xerox's complaint was "Apple's alleged unauthorized use of Xerox' copyrighted work." *Id.* at 1551. Nautilus also directs the Court's attention to <u>Motown Record Corp. v. George A. Hormel & Co.</u>, 657 F.Supp. 1236 (C.D. Cal. 1987), another copyright infringement case. But, as Plaintiffs correctly note, both of these courts rested their decisions on explicit preemption. The Copyright Act, in a section titled "Preemption with respect to other laws," provides:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, *are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.*

17 U.S.C. §301(a) (2006) (emphasis added). As noted above, and acknowledged by the parties, this Court does not have the luxury of basing its decision on an express preemption clause. Such

---

[13] It may very well be that a suit by a private plaintiff who does not allege competitive injury does not survive the conflict preemption analysis. However, those are not the facts before the Court.

language is nowhere to be found in the America Invents Act or any other part of the Patent Act. As such, the cases cited by Nautilus are of limited significance here.

The Federal Circuit addressed the issue of federal preemption of state unfair competition claims in Dow Chem. Co. v. Exxon Corp., 139 F.3d 1470 (1998). In Dow, Dow Chemical brought a state law unfair competition claim based on threats Exxon had made to Dow's customers, allegedly in bad faith, threatening to sue them for infringement of Exxon's patent. The Court framed the issue before it as follows:

> whether state courts, or federal courts adjudicating state law claims, may hear a state law tort claim for intentional interference with actual and prospective contractual relations that implicates the patent law issue of inequitable conduct or, alternatively, whether such a claim is preempted by the federal patent law.

Id. at 1473. Reasoning that protecting contractual relations was primarily the realm of state law, and finding that the claim for tortious interference did "not stand as an impermissible obstacle to the accomplishment and execution of the patent laws and because [it] requires entirely different elements from the defense of inequitable conduct under the federal patent laws," the Court held that the state law claim was not preempted.

In Hunter Douglas, relied on heavily by Plaintiffs, Hunter Douglas's state law claims were based on its accusations that Harmonic, "act[ing] with willful and wanton disregard," obtained invalid and unenforceable patents, and intentionally deceived and mislead the Patent and Trademark Office ("PTO") in order to gain a competitive advantage. 153 F.3d at 1322. Ultimately, the Federal Circuit remanded the case back to the district court for a redetermination of whether the state law claims were preempted by federal law. Id. at 1337. But in so doing, the court recognized two areas where its precedent counsels that state law claims are preempted by federal patent law:

17

First, federal patent law bars the imposition of liability for conduct before the PTO unless the plaintiff can show that the patentholder's conduct amounted to fraud or rendered the patent application process a sham . . . . Second, federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith.

*Id.* at 1336. It is this second scenario which is most closely analogous to the case before this Court. Here, Nautilus purportedly placed federal patent numbers on its manufactured products as a way of communicating its intellectual property holdings to the public. Plaintiffs' claim that those numbers did not cover the products they marked. At its core, Plaintiffs' false marking claim is an attempt to hold Nautilus liable for "publicizing a patent in the marketplace." *Id.* Thus, under controlling precedent, the claim is preempted unless Nautilus acted in bad faith. *Cf.* Spotless Enterprises, Inc. v. Carlisle Plastics, Inc., 56 F.Supp.2d 274, 284–85 (E.D.N.Y. 1999) ("[Federal Circuit cases] make it abundantly clear that state unfair competition claims based on a patentholder's good faith publication of his patent rights . . . cannot be successful"). In this case, however, the Court finds that the extensive First Amended Complaint adequately alleges bad faith as part of the Plaintiffs' state law claims.[14] *See, e.g.* FAC ¶¶ 53, 77–78, 83, 90, 96.

It is true that Hunter Douglas and the other Federal Circuit cases discussed above did not deal with false marking specifically. But against Nautilus's urging, the Court finds no reason why the same rationale should not apply in false marking cases. Other trial courts faced with allegations of false marking have reached a similar conclusion. *See, e.g.,* Third Party Verification, Inc. v. Signaturelink, Inc., 492 F.Supp.2d 1314, 1326 (M.D. Fla. 2007) (recognizing Federal Circuit's bad faith requirement where false marking was used as basis of state law

---

[14] Bad faith is not an element of the UCL or False Advertising Law under California law or the CPA under Washington law. *See generally* Kasky, 45 P.3d at 949–50 (elements of UCL and false advertising claims); Indus. Indem. Co. of the Northwest, Inc. v. Kallevig, 792 P.2d 520, 528 (Wash. 1990) (elements of CPA claim). This does not matter for the purposes of the Court's analysis. The Federal Circuit has explained, even where the state law tort at issue lacks a bad faith element, "to escape preemption, the plaintiff would need to allege and prove ultimately such conduct." Hunter Douglas,153 F.3d at 1337.

consumer protection claims); <u>DP Wagner Mfg. Inc. v. Pro Patch Sys. Inc.</u>, 434 F.Supp.2d 445, 460–61 (S.D. Tex. 2006) (adopting <u>Hunter Douglas</u> rationale in holding that state law unfair competition claims were not preempted).

The Supreme Court has recognized three objectives of the nation's patent laws: "[(1)]providing an incentive to invent, [(2)] promoting the full disclosure of inventions, and [(3)] ensuring that that which is in the public domain cannot be removed therefrom by action of the States." <u>Dow Chem.</u>, 139 F.3d at 1474 (citing <u>Kewanee Oil Co. v. Bicron Corp.</u>, 416 U.S. 470, 480–81 (1974)) (internal quotation marks omitted). The Court finds that allowing the Plaintiffs to press their state law claims here would not endanger those objectives. The state law causes of action, as applied in this case, do not impose requirements that are inconsistent with federal law, and they do not serve as an obstacle to Congressional objectives. *Accord* <u>Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.</u>, 196 F.3d 1366, 1371 (Fed. Cir. 1999) (no conflict preemption for state law claims of unjust enrichment and fraudulent nondisclosure). Thus, Nautilus's conflict preemption argument must also fail.

## F. The Public Interest Requirement of the Washington State Claim

Aside from its preemption arguments, Nautilus also argues that Plaintiffs' CPA claim should be dismissed on independent grounds because they have not met the CPA's "public interest" requirement. A successful claim under the CPA requires the plaintiff to show "(1) an unfair or deceptive act or practice (2) occurring in trade or commerce *(3) that impacts the public interest* (4) causing an injury to the plaintiff's business or property with (5) a causal link between the unfair or deceptive act and the injury suffered. <u>Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.</u>, 307 F.3d 1127, 1138 (9th Cir. 2002) (emphasis added) (citing <u>Indus. Indem. Co. of the Northwest, Inc. v. Kallevig</u>, 792 P.2d 520, 528 (Wash. 1990)).

19

Under Washington law, "a claimant may establish that an act or practice is injurious to the public interest because it: . . . (3) (a) injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." Alliance Shippers, Inc. v. Always Transport, Inc., No. CV-09-3126-RMP, 2011 WL 4352310 at *5 (E.D. Wash. Sept. 16, 2011) (quoting Wash. Rev. Code § 19.86.093 (2010)). It seems obvious that the practice of falsely marking products which are sold to the general public in the stream of commerce has the capacity to injure persons other than SCSRA and Sukumar. Moreover, "[i]f an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market. False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement." Forest Grp., 590 F.3d at 1303 (Fed. Cir. 2009). The Court finds that Plaintiffs' complaint, on its face, satisfies the public interest prong of the CPA and declines to dismiss the claim on this ground.

IV.  **CONCLUSION**

For the reasons stated above, the Court finds that the Plaintiffs' state law claims are not preempted by the Patent Act, as amended. It further finds that the Plaintiffs have satisfied the public interest requirement under the Washington Consumer Protection Act. Accordingly, Nautilus's Partial Motion to Dismiss is hereby **DENIED.**

The Clerk is **DIRECTED** to transmit copies of this Opinion and Order to all counsel of record.

20

**IT IS SO ORDERED.**

ENTER: This _19th_ day of December, 2011.

Senior United States District Judge