CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
ROANOKE DIVISION

FEB 1 0 2012

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

PONANI SUKUMAR,                )        Case No.: 7:11-cv-00218
    and                       )
SOUTHERN CALIFORNIA            )
    STROKE REHABILITATION     )        **MEMORANDUM OPINION**
    ASSOCIATES, INC.,         )
    Plaintiffs,                )
                              )
v.                             )        **By: James C. Turk**
                              )        **Senior United States District Judge**
NAUTILUS, INC.,                )
                              )
    Defendant.                 )

This matter is before the Court on Plaintiffs Ponani Sukumar ("Sukumar") and Southern

California Stroke Rehabilitation Associates, Inc. ("SCSRA")'s Motion for Partial Summary

Judgment (ECF No. 80). Defendant Nautilus, Inc. ("Nautilus") filed an Opposition (ECF No.

89), to which the Plaintiffs replied (ECF No. 91). The parties were heard on December 21, 2011,

and the matter is now ripe for disposition. For the reasons set forth below, Plaintiffs' Motion

(ECF No. 80) is **GRANTED IN PART and DENIED IN PART.**[1]

I.      **Factual and Procedural Background**

In 2004, Plaintiff Sukumar founded Plaintiff SCSRA in support of his quest to create a

profit-generating, specific, specialized, customized, equipment-based protocol to assist elderly

patients with medical rehabilitation. Am. Compl. ¶¶ 24–27. After an extensive search for

---

[1] After oral argument on this matter, Plaintiffs submitted the additional declaration of Dae H. Cho (ECF
No. 98) in support of their motion. Nautilus objected to this (ECF No. 99). Nautilus's objection is
overruled, and the Cho declaration is made part of the record and was considered as part of the Court's
determination of this motion.

rehabilitation equipment, Sukumar determined that no "off the shelf" product would meet his requirements. *Id.* ¶ 30. Sukumar found that machines manufactured by Nautilus came closest to his needs, but nonetheless needed modifications to work with his rehabilitation protocol. *Id.* Sukumar, an engineer with a Wharton MBA, believed he could make the required modifications himself, but after learning about Nautilus's extensive patent portfolio and examining the patent labels on certain of Nautilus's products, he was intimidated and deterred from attempting such modifications, instead determining that he would have to rely on Nautilus to acquire the technology needed for his custom machines. *Id.* ¶ 34. Ultimately, Sukumar paid Nautilus more than $150,000 to manufacture customized exercise equipment. *Id.* ¶ 31. Moreover, on more than one occasion, Sukumar unsuccessfully sought to license technology from Nautilus. *Id.* ¶ 36. According to Sukumar, his ongoing belief that he needed a license from Nautilus prevented him from designing and building custom machines for SCSRA. *Id.* ¶ 37.

The Plaintiffs originally filed a Complaint against Nautilus in the Central District of California, accusing it of falsely marking a number of products in contravention of 35 U.S.C. § 292, the federal false marking statute ("Section 292"). *See* Compl., Oct. 20, 2011, ECF No. 1. On Nautilus's motion (ECF No. 20), the case was subsequently transferred to this District, in part because the machines alleged to have been falsely marked were manufactured at a former Nautilus plant located in Independence, Virginia. *See* Ord. Re Def.'s Mot. to Transfer, May 9, 2011, ECF No. 34. On June 3, 2011, Nautilus filed a motion to stay these proceedings, in part because legislation that would affect the outcome of this case was pending in Congress. *See* Def.'s Mot. to Stay, June 3, 2011, ECF No. 51. The Court agreed with Nautilus, and on June 30, 2011, ordered that the proceedings be stayed. On September 16, 2011, the President signed into law the Leahy-Smith America Invents Act, thereby amending Section 292 to eliminate its *qui*

2

*tam* provisions and institute a competitive injury requirement for private plaintiffs. That same day, the Plaintiffs filed a First Amended Complaint explicitly alleging competitive injury and adding California and Washington state law claims. Plaintiffs then filed the instant Motion for Partial Summary Judgment, asking the Court to grant summary judgment as to certain elements of its state and federal claims. Specifically, the Plaintiffs ask the Court to find, as a matter of law:

(1) Nautilus (a) improperly marked each of nine "accused machines," thereby violating the first element of Section 292, and (b) did so with the intent to deceive, thereby violating the second element of Section 292;

(2) Nautilus (a) intended to dispose of real or personal property, to wit, the accused machines, and (b) publicly disseminated statements which were untrue or misleading and which it knew, or in the exercise of reasonable care, should have known, to be untrue or misleading, concerning the accused machines, thereby violating the California False Advertising Law;

(3) Nautilus (a) engaged in an unfair or deceptive act or practice, (b) in trade or commerce, (c) that impacted the public interest, thereby violating the first three elements of the Washington Consumer Protection Act.

## II.     **Standard of Review**

"[T]he function of a motion for summary judgment is to smoke out if there is any case, i.e., any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition." Bland v. Norfolk & S. R. R. Co., 406 F.2d 863, 866 (4th Cir. 1969). In considering

3

a summary judgment motion, the Court views the facts, and any inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *See* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Summary judgment is appropriate where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Moreover, summary judgment may be sought as to the entirety of a claim or defense or part of a claim or defense.  *Id.*

A genuine issue of material fact exists where reasonable jurors could find that the nonmoving party is entitled to a verdict in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  The moving party bears the initial burden of showing the lack of a genuine dispute as to the material facts in the case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a motion for summary judgment is properly made and supported, however, that burden shifts to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A moving party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

But "[e]ven where summary judgment is appropriate on the record so far made in a case, a court may properly decline, for a variety of reasons, to grant it." Forest Hills Early Learning Ctr., Inc. v. Lukhard, 728 F.2d 230, 245 (4th Cir. 1984).  *Accord* Andrew v. Clark, 561 F.3d 261, 271 (4th Cir. 2009) (recognizing advisory committee notes affording district court discretion even where summary judgment standard is met). *See also* Little Six, Inc. v. United States, 280 F.3d 1371, 1373 (Fed. Cir. 2002) ("In reviewing a denial of a motion for summary judgment, we give considerable deference to the trial court, and will not disturb the trial court's denial of

summary judgment unless we find that the court has indeed abused its discretion." (internal quotation marks omitted)).

## III.   Discussion

### A. The False Marking Statute (35 U.S.C. § 292)

An entity violates Section 292 when it (1) falsely marks an unpatented article; and (2) does so for the purpose of deceiving the public.[2] 35 U.S.C.A. § 292(a) (West 2011).  The Plaintiffs ask the Court to grant them summary judgment as to both of these elements.  The Court takes up these arguments in turn.

### 1. Falsely Marking Unpatented Articles

Here, Plaintiffs argue that nine of the machines Nautilus manufactured at its Independence plant—six strength machines and three cardiovascular machines—are unpatented and falsely marked.  For the purposes of the false marking statute, an article is "unpatented" where "the article in question is not covered by at least one claim of each patent with which the article is marked."  Clontech, 406 F.3d 1347, 1352 (Fed. Cir. 2005).  Thus, the Court must examine each of the so-called "accused machines" to determine whether it is not covered by at least one claim of each patent with which it is marked.  In support of their request on this element, Plaintiffs provide the declaration of an expert, Fred Smith, the declaration of their counsel, and copies of patent filings.  Nautilus has not contested this evidence.  In fact, at oral

---

[2] As noted above, where, as here, a private actor, as opposed to the government, is suing to enforce a violation of the statute, that actor must have suffered "competitive injury."  35 U.S.C.A. § 292(b) (West 2011).  The Plaintiffs do not seek summary judgment on this point.

argument, it admitted the machines were mismarked.[3]  *See* <u>United States v. Dooley</u>, 424 F.2d

1067, 1067–68 (5th Cir. 1970) (court may consider party's concession at oral argument for

purposes of summary judgment).

### a.  Accused Strength Machines

The first part of the Plaintiffs' false marking claim is based on six exercise machines

chiefly intended to help the user increase strength and build muscle.  These machines are the

2006 Nitro Plus Biceps Curl, the 2007 Nitro V-Triceps Extension, the 2008 F2 Lat Pulldown, the

2008 Studio Pec Fly, the 2009 One Triceps Press, and the 2009 XPLoad Compound Row

(collectively, the "accused strength machines").   The accused strength machines all carried the

same label, which was endorsed with the Nautilus name, the words "Manufactured Under U.S.

Patent Numbers and Other Patents Pending," followed by a set of 24 numbers in the format

X,XXX,XXX.  These numbers include 4,257,592; 4,456,245; 4,493,485; 4,589,656; 4,733,860;

5,374,227; 5,749,807; and 5,810,696.  Even a cursory review of the evidence reveals that none of

the aforementioned patent numbers cover the accused strength machines.  The '592 patent deals

with an exercising apparatus with improvement in handle structure, rope arrangement, and

clamping means.  Smith Decl. ¶ 12.  The '245 patent is for a rotary torso apparatus.  *Id.* ¶16.  The

---

[3] Although Nautilus says nothing about the mismarking in its papers, its admission was made clear at the hearing on this motion:

> THE COURT: Can't the two sides stipulate that the machines were improperly marked?

> MR. KEARNS: Your Honor, I'm glad you brought that up. They asked us in discovery, in requests for admissions, whether we admitted that, and we did.

> THE COURT: You admit that?

> MR. KEARNS: Yes.

Tr. 40: 12–18.

'485 patent covers an invention dealing with an open loop system that monitors an exercising person's activity and directs the person by comparing his or her activity with that of a preprogrammed regimen.  *Id.* ¶ 20.  The '656 patent covers a combination of things intended to keep a user more comfortable during extended exercise.  *Id.* ¶ 25.  These include certain pedals, fan means, inlet means, ventilation means, and air passage means.  Ex. O, attached to Smith Decl., at 3–4.  The '860 patent deals with an upper torso engagement means and a rotary torso exercise apparatus.  Smith Decl. ¶ 29.  The '227 patent covers a stair stepping exercise machine.  *Id.* ¶ 33.  Finally, the '807 and '696 patents cover an exercise apparatus that focuses on a motorless fluid break.  *Id.* ¶¶ 37–38, 41–42.

### b.  Accused Cardio Machines

Plaintiffs base the second part of their false marking claim on three exercise machines intended to increase cardiovascular performance.  These machines are the 2006 Nautilus Commercial Series E916 Elliptical; the 2006 Nautilus Commercial Series EV916 Elliptical; and the 2006 StairMaster StepMill 7000PT (collectively, the "accused cardio machines").  The accused cardio machines also all carried a patent label, albeit one that was different from that pasted on the accused strength machines.  Like the strength machine label, the cardio machine label prominently displayed the Nautilus name and logo, with the words "Assembled in U.S.A. Manufactured under U.S. Patent Numbers and Other Patents Pending," underneath, followed by a set of 16 different patent numbers.  Among these numbers were the patent numbers D357,956; 5,060,938; 5,308,303; 5,312,313; 5,380,258; 5,387,170; 5,437,589; and 5,499,959.  Here again, it is patently obvious to even this lay Court that none of these eight patents cover any of the accused cardio machines.  Nautilus has specifically admitted that the '956 patent does not read on the accused cardio machines.  LaPorte Decl., ECF No. 30, Ex. 53 at 19.  The '938 and '258

patents are directed to rope climbing devices. Smith Decl. ¶¶ 45, 57. The '303 patent is for a resistance training apparatus, *id.* ¶ 49, which of course is for strength training and not improving cardiovascular health. The '313 patent has to do with preventing the binding of a guidance system for upper body exercise equipment. *Id.* ¶ 53. The '170 patent is also for resistance training. *Id.* ¶ 61. Finally, the '589 and '599 patents are directed towards upper body exercise apparatuses. *Id.* ¶¶ 65, 69.

The Court finds that the Plaintiffs have met their burden of showing that there is no genuine issue of material fact as to the issue of the accused strength machines and the accused cardio machines being unpatented articles that are falsely marked. Since Nautilus has not addressed these claims, the Court considers them to be uncontested. Fed. R. Civ. P. 56(e). Accordingly, the Court finds that the accused machines were unpatented within the meaning of Section 292. The Court additionally finds that Nautilus falsely marked the unpatented accused machines. Thus, the Plaintiffs' motion is **GRANTED** as to the first Section 292 element.

### 2.   Intent to Deceive

Falsely marking unpatented machines is necessary, but not sufficient, to violate the false marking statute. A purported violator must also act "for the purpose of deceiving the public." 35 U.S.C.A. § 292(a) (West 2011). Plaintiffs argue that the blatant extent of the mismarking, together with Nautilus's knowledge of it, is enough to meet their burden of showing that there is no genuine issue of material fact as to whether Nautilus acted with the intent to deceive. The Court disagrees.

"Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into

8

thinking that the statement is true." Clontech, 406 F.3d at 1352 (citing Seven Cases v. United

States, 239 U.S. 510, 517–18 (1916)).  The question of whether a false marking defendant acted

with the requisite state of mind is a question of fact, ordinarily determined by the fact finder after

trial.  Clontech, 406 F.3d at 1353.  *See also* Chanel, Inc. v. Italian Activewear of Fla., Inc., 931

F.2d 1472, 1476 (11th Cir. 1991) ("As a general rule, a party's state of mind (such as knowledge

or intent) is a question of fact for the factfinder, to be determined after trial.").  Moreover, in the

false marking context, "[t]he bar for proving deceptive intent . . . is particularly high."  Pequignot

v. Solo Cup Co., 608 F.3d 1356, 1363 (Fed. Cir. 2010).  In order to grant summary judgment on

this element, the Court must find that Nautilus, in falsely marking the accused machines, evinced

a conscious desire that the public be deceived.  Pequignot, 608 F.3d at 1363 (citing United States

v. Bailey, 444 U.S. 394, 404 (1980)).  Plaintiffs argue that the very fact that Nautilus used

different labels on different lines of machines, combined with securities filings highlighting the

scope of its patent portfolio and a previous judgment against it for false marking, show that

Nautilus harbored the required deceptive intent.

Plaintiffs place particular emphasis on the Icon Fitness case, arguing that it demonstrates

that Nautilus is an "adjudicated, repeat offender."  In Icon Health & Fitness, Inc. v. Nautilus,

Inc., No. 02-CV-109 (D. Utah 2006), a jury found, inter alia, that Nautilus had violated Section

292 by falsely indicating that the "Power Rods" used as part of its Bowflex exercise machine

were patented or made with patented technology.  The Plaintiffs also point to a number of

statements in Nautilus's securities filings and financial transactions that generally discuss the

scope of the Nautilus patent portfolio and its importance to the company, and which tend to show

that Nautilus had knowledge of the patents it held.  *See generally* LaPorte Decl., Exs. 36–41,48–

51. The Plaintiffs also point to a number of cases where Nautilus sought to enforce its patent rights. *See id.* Exs. 42–47.

In opposition, Nautilus submitted a number of declarations. Plaintiffs discount the probative value of these declarations, arguing that they are nothing more than conclusory denials of the intent requirement.[4] It is true that the Federal Circuit has counseled that "the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability." Clontech, 406 F.3d at 1352. However, the evidence submitted by Nautilus provides more than naked assertions. Mark Porter, Nautilus's 30(b)(6) witness,[5] testified that Nautilus did not receive any specific legal advice regarding its patent marking labels. Porter Depo. 93:2–9; 133:3–8. The parties have interpreted this testimony in different ways. The Plaintiffs view it as confirming that Nautilus was aware of its legal obligations, while Nautilus portrays it as supporting its position that it had no specific knowledge that the accused machines were falsely marked. Greg Webb, who was Nautilus's Vice President of Engineering when the Accused Machines were manufactured, discussed the history and purpose of the so-called "uni-label," declaring that "the use of the single patent label increased the efficiency and ease of the manufacturing process because it allowed one patent label to be affixed to each machine quickly and it could be applied to multiple orders or orders of mixed machines." Webb Decl. ¶ 9. He further declared that he considered the affixing of patent labels to be non-value added, non-core,

---

[4] Plaintiffs also take umbrage at the particular individuals whose affidavits Nautilus submits, claiming that Nautilus should have submitted declarations from its general counsel on the creation of the patent labels. *See* Tr. 25–26. But the only requirements for affidavits or declarations submitted in connection with a motion for summary judgment are that they "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court is mindful of this imperative and has limited its consideration of the parties' affidavits to those statements made upon personal knowledge.

[5] Under Rule 30(b)(6) of the Federal Rules of Civil Procedure, a corporation that is to be deposed may designate "one or more officers, directors, or managing agents" to testify on its behalf.

and marginal, and that Nautilus did not have any kind of formal system or method of evaluating

the labels used or monitoring their use.  On the other hand, Webb also stated that the labels were

updated from time to time with patent numbers being added and removed.  *Id.* ¶ 11.

Nautilus further offers the declaration of Terry Hensley, who was the Plant Manager at

the Independence plant during the time the accused machines were manufactured.  According to

Hensley, application of the patent label was an "afterthought" and just one minor part of a much

larger, more complex manufacturing process.  Hensley Decl. ¶9.  Moreover, according to

Hensley, the use of the uni-label, which listed a number of different patents, eliminated the need

for the hourly employees who worked under him to discern which patent numbers applied to

which product.  *Id.* ¶8.

Plaintiffs disparage Nautilus's "unilabel defense" as nothing more than a "lawyer's

creation" created to track Federal Circuit case law.  Tr. 23–24.  That may be.  And it may be that

at the time of trial, the fact finder finds the defense unconvincing.[6]  But on a motion for summary

judgment, the Court is required to consider all the facts and any inferences drawn from those

facts in favor of the nonmoving party, in this case, Nautilus.  In so doing, the Court finds a

genuine issue of material fact as to whether Nautilus acted with deceptive intent.

In the alternative, Plaintiffs ask the Court to find that they are entitled to an inference that

false marking, coupled with knowledge of that false marking, creates a rebuttable presumption

that the Defendant acted with deceptive intent.  *See* Pequignot, 608 F.3d at 1362–63.  In order to

---

[6] A case brought under the False Marking statute is an action at law, and the Plaintiffs are entitled to a
jury on their federal claim.  *See generally* U.S. Const. Am. VII.  *See also* Am. Compl. at 54 (jury
demand).  However, at least some of the Plaintiffs' state law claims sound in equity rather than in law,
and accordingly must be decided by the Court at trial.  *See* Korea Supply Co. v. Lockheed Martin Corp.,
63 P.3d 937, 943 (Cal. 2003) ("A UCL action is equitable in nature . . . .").

show that Nautilus had knowledge of the false marking, the Plaintiffs must show, by a preponderance of the evidence, that Nautilus "did not have a reasonable belief that the [accused machines] were properly marked." Clontech, 406 F.3d at 1352–53.  Granting summary judgment on this point, therefore, would require the Court to conclude that there is no genuine issue of material fact as to whether Nautilus had a reasonable belief that the accused machines were not mismarked.  To be sure, in light of the Icon Fitness case, no reasonable jury could find that Nautilus was not aware that the Power Rods in its Bowflex line were falsely marked. However, there is nothing in the record to indicate that the accused machines were the subject of any prior false marking suit.  The Plaintiffs have failed to bring forth any direct evidence that Nautilus knew or did not have a reasonable belief that *the accused machines* were falsely marked.  That is the standard for the Clontech presumption to apply here.

Tellingly, Plaintiffs argue that their "evidence demonstrates that Nautilus *must have known* that its patent labels were incorrect and *must have known* the scope of its patents." Pl.'s Reply at 5 (emphasis added).  As persuasive as these arguments may prove to be at trial, they are, in the end, insufficient to meet the high bar for summary judgment.  On these facts, the Court cannot conclude that Plaintiffs are entitled to a rebuttable presumption that Nautilus acted with deceptive intent.  The Plaintiffs' motion as to the intent element of Section 292 is **DENIED**.

### B.  California False Advertising Law (Cal. Bus. & Prof. Code § 17500)

Plaintiffs also ask the Court to grant summary judgment on their California false advertising claim.  The California False Advertising Law ("FAL") makes it unlawful for an entity, with intent to dispose of real or personal property, to make or disseminate or cause to be disseminated, "any statement concerning that real or personal property . . . which is untrue or

misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500 (West 2008). The Plaintiffs ask the Court to grant summary judgment as to two elements of this claim: (1) Nautilus intended to dispose of real or personal property; and (2) Nautilus publicly disseminated untrue or misleading statements about that property which it knew, or in the exercise of reasonable care should have known, was untrue or misleading. The Court again addresses each element in turn.

### 1. Intent to Dispose of Real or Personal Property

Plaintiffs first ask the Court to find that Nautilus intended to dispose of real or personal property. Here, it is clear that Nautilus intended to dispose of the accused machines. Nautilus does not appear to contest this element, and the declarations it submitted in fact confirm it. The accused machines were manufactured for sale to commercial customers. As such, the Court finds that Nautilus intended to dispose of real or personal property, and Plaintiff's Motion is **GRANTED** as to this element of the FAL.

### 2. Public Dissemination of Untrue or Misleading Statements

Plaintiffs also seek summary judgment as to the second element of the FAL. This element prohibits an entity from publicly disseminating any untrue or misleading statement which it knew or reasonably should have known was untrue or misleading and which concerns the real or personal property at issue in the first element. In beginning its analysis here, the Court first addresses an initial matter. The parties appear to believe that deciding this motion requires the Court to determine whether or not the patent labels constitute "advertising" per se. Nautilus in particular spills substantial ink trying to convince the Court that patent labels are not advertising.

13

Although Section 17500 is widely referred to as the False Advertising Law, there is nothing in the statute that requires the dissemination of an advertisement. Rather, the plain text of the law simply bars the dissemination of untrue or misleading statements. *See* Cal. Civ. Proc. Code § 1859 (West 2007) (legislative intent should be taken into account when construing statutes); Nolan v. City of Anaheim, 92 P.3d 350, 352 (Cal. 2004) ("To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. When the language of a statute is clear, we need go no further." (internal citations omitted)). Thus, the appropriate inquiry is whether Nautilus publicly disseminated untrue or misleading statements; the Court need pay no attention to whether those statements are advertising in the traditional, commercial sense of the word.

The labels on the accused machines read: "Manufactured Under U.S. Patent Numbers and Other Patents Pending" followed by a list of patent numbers. These are clearly statements, by any reasonable definition of the term. Above, the Court found as a matter of law that Nautilus marked the accused machines with some patent numbers that did not cover the machines upon which they were marked. Thus, the machines *were not* manufactured under the U.S. patent numbers under which the labels stated they were manufactured under. As such, the Court finds that Nautilus disseminated untrue statements in connection with the disposal of personal property, to wit, the accused machines. Additionally, the Court finds that these statements concerned the accused machines.

However, that is far from the end of the story. This element of the FAL also bears a state of mind requirement. In contrast to Section 292, the FAL requires only that a defendant knew or should have known the untrue statements were, in fact, untrue. The evidence is insufficient to

find that Nautilus knew the statements were untrue.  Whether Nautilus "by the exercise of reasonable care" should have known that those statements were untrue is a thornier question.

The FAL's reasonable care requirement "imposes a duty of investigation." People v. Forest E. Olson, Inc., 186 Cal. Rptr. 804, 806 (Cal. Ct. App. 1982) (citing People v. Witzerman, 105 Cal. Rptr. 284 (Cal. Ct. App. 1972)).  Moreover, "the failure to verify and investigate breaches the duty of care when facts are present which would put a reasonable person on notice of possible misrepresentations." Forest E. Olson, Inc., 186 Cal. Rptr. at 806.  Additionally, the California courts have interpreted the FAL to require a duty of communication between corporate departments—that is, a large corporation such as Nautilus may not escape liability just because no one employee or officer has all the information necessary to use reasonable care to avoid disseminating false statements. *See id.*

But largely for the same reasons the Court cannot grant summary judgment as to the "deceptive intent" element of Section 292, it cannot do so here.  "Reasonable care" is a principle of negligence, *see* Cal. Civ. Jury Inst. § 401, and the question of whether Nautilus used reasonable care under the circumstances is a matter for the trier of fact.  *See* Ramirez v. Plough, Inc., 863 P.2d 167, 171 (Cal. 1993) ("The formulation of the standard of care is a question of law for the court.  Once the court has formulated the standard, its application to the facts of the case is a task for the trier of fact if reasonable minds might differ as to whether the defendant's conduct has conformed to the standard." (internal citations omitted)).  On the present record, the Court finds that there is a genuine issue of material fact as to whether Nautilus knew, or by the exercise of reasonable care, should have known, that the statements concerning the accused machines were untrue or misleading.  Accordingly, the Plaintiffs' Motion is **DENIED** as to the second element of the FAL.

15

## C. Washington Consumer Protection Act (Wash. Rev. Code § 19.86.020)

Finally, the Plaintiffs also seek partial summary judgment as to certain elements of their claims under the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020 ("CPA").[7] To prove a violation of the CPA, the Plaintiffs must show that (1) Nautilus engaged in an unfair or deceptive act or practice; (2) that occurred in the conduct of Nautilus's trade or commerce; (3) and affected the public interest; (4) which caused; (5) injury to the Plaintiffs' business or property. *See* Goel v. Jain, 259 F.Supp.2d 1128, 1142 (W.D. Wash. 2003) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 535 (Wash. 1986)). Plaintiffs ask for summary judgment as to the first three of these elements. The Court addresses each of them in turn.

### 1. Defendant Engaged in an Unfair or Deceptive Practice

The first element of the CPA is that the Defendant engaged in an unfair or deceptive act or practice. Plaintiffs claim only that Nautilus's practice was "deceptive" and do not argue it was unfair, so the Court limits its analysis to the "deceptive" prong. The CPA does not define an

---

[7] Plaintiffs somewhat gratuitously tell the Court that the Washington claim is properly before it because the law is one of extraterritorial application. Mem. of P. & A. in Supp. of Pls.' Mot. for Partial Summ. J. 23. In support of this contention, they quote a case of the Washington Supreme Court. This would be all well and good, except for the Plaintiffs' quotation comes from the *dissenting* opinion, without any notation thereto. *See* Schnall v. AT&T Wireless Svcs., Inc., 259 P.3d 129, 142 (Wash. 2011) (en banc) (Sanders, J., dissenting). In fact, the majority opinion expressly declined to address the question of extraterritoriality. *Id.* at 136 n.4 (maj. op.). Inexplicably, Plaintiffs proffer the same quotation from the Schnall case in their reply brief, this time identifying it as coming from the *concurring* opinion. Pls.' Reply in Supp. of Their Mot. for Partial Summ. J. 15. This is simply not true. The Court will assume that this is a simple mistake, as the Court itself is prone to make from time to time, but notes that this is the kind of oversight that has the capacity to seriously mislead a reviewing tribunal. *See generally* Model Rules of Prof'l Conduct R. 3.3(a) (2010).

Moreover, the question of whether an out-of-state plaintiff has standing to bring a CPA claim is not presently before the Court. Aside from a few conclusory statements in its brief on this motion, Nautilus has not separately challenged the Plaintiffs' CPA claim on that basis, and the Court will not address the issue here.

"unfair or deceptive act or practice." However, "implicit in the definition of deceptive under the CPA is the understanding that the practice misleads or misrepresents something of material importance." Nguyen v. Doak Homes, Inc., 167 P.3d 1162,1166 (Wash. Ct. App. 2007) (quoting Holiday Resort Cmty. Ass'n. v. Echo Lake Assocs., LLC, 135 P.3d 499, 507 (Wash. Ct. App. 2006)) (internal quotation marks omitted); *accord* Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1065–66 (9th Cir. 2009). Thus, Nautilus's act of mismarking is only deceptive if the mismarking misleads or makes a material misrepresentation. The Court finds that the practice of placing patent numbers on a product that do not cover that product is misleading.

Unlike Section 292, the CPA does not require that the act or practice in question be intended to deceive.[8] Wash. Pattern Jury Instr. Civ. WPI 310.08 (5th ed. 2011). *See also* State v. A.N.W. Seed Corp., 802 P.2d 1353, 1359 (Wash. 1991). However, in order to prove that Nautilus engaged in a deceptive act or practice, the Plaintiffs must show that Nautilus's conduct in falsely marking the accused machines "had the capacity to deceive a substantial portion of the public." Hangman Ridge, 719 P.2d at 535.

Whether a practice has the capacity to deceive a substantial portion of the public is a question of fact. Holiday Resort, 135 P.3d at 507. Here, the Court has already found, and Nautilus does not dispute, that it manufactured the accused machines with labels containing the words "Manufactured under U.S. Patent Numbers" and thereafter listed patent numbers that did not cover the accused machines. Moreover, it is undisputed that these machines were regularly

---

[8] Bad faith is not an element of any of the state law claims before the Court. However, the Court has previously recognized that in order to avoid preemption on their state law claims, the Plaintiffs will ultimately have to prove that Nautilus acted in bad faith. *See* Mem. Op. & Ord., ECF No. 92, at 18.

sold to commercial entities. The key inquiry here, then, is whether the practice of falsely marking the accused machines had the capacity to deceive a substantial portion of the public.

Nautilus directs the Court's attention to Swartz v. KPMG LLP, 476 F.3d 756 (9th Cir. 2007) (per curiam), a decision of the U.S. Court of Appeals for the Ninth Circuit interpreting Washington law. In Swartz, the defendants sold the plaintiff a tax shelter scheme at a cost of over one million dollars, even though they knew that the scheme would be considered illegal by the IRS. Id. at 757. The Ninth Circuit upheld the district court's dismissal of the plaintiff's CPA claim, noting that "a scheme marketed to a select audience of persons with millions of dollars of capital gains to shield from taxation lacks the capacity to deceive a substantial portion of the public." Id. at 761 (internal quotation marks omitted).[9]  The case is not squarely on point—the size of the population recognized by the Swartz court may be smaller than that which would be affected by the mismarked accused machines, and the court confronted a different procedural posture. But it illustrates a larger point: deciding whether conduct has the capacity to deceive a substantial portion of the public is not a formulaic legal exercise, but a fact-intensive inquiry.

Ultimately, this is not an issue that may be determined on the present record. Plaintiffs have put forth no direct evidence showing that false marking of the accused machines "had the capacity to deceive a substantial portion of the public." On the other hand, the record reveals that the accused machines were sold only to commercial entities, such as gyms and other industrial users. Additionally, the patent labels were placed in inconspicuous locations, and were not prominently displayed. Considering all the facts and any reasonable inferences flowing from

---

[9] Plaintiffs deride Swartz as a case that predates the Washington legislature's enactment of Wash. Rev. Code § 19.86.093, which was enacted in order to clarify the "public interest" element of the CPA, and conclude that it is of limited value to the Court. But the Ninth Circuit was dealing with the "unfair or deceptive act or practice" prong of the CPA, not with the independent public interest element. Thus, Swartz has nothing to do with § 19.86.093.

those facts in Nautilus's favor, the Court finds a genuine issue of material fact as to whether Nautilus's practice of falsely marking the accused machines had the capacity to deceive a substantial portion of the public.  Accordingly, the Plaintiffs' motion is **DENIED** as to the "unfair or deceptive practice" element of the CPA.

### 2.  In Trade or Commerce

The second element of the CPA upon which the Plaintiffs seek summary judgment is its requirement that the acts or practices in question be committed "in the conduct of any trade or commerce."  Wash Rev. Code § 19.86.020.  The CPA must be construed liberally.  § 19.86.920. "The CPA, on its face, shows a carefully drafted attempt to bring within its reaches *every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce."  Short v. Demopolis, 691 P.2d 163, 168 (Wash. 1984).  An act or practice is committed in commerce where it involves the purchase or sale of goods.  *See* Guinness v. King Cnty., 202 P.2d 737, 739 (Wash. 1949).  Here, the patent labels were applied to the accused machines, which were then sold to others.   It cannot seriously be disputed that Nautilus was acting "in trade or commerce." The motion is **GRANTED** as to this element of the CPA.

### 3.  Affecting the Public Interest

In addition to the "substantial portion of the public" prong of the "deceptive act" analysis, a successful CPA claim also requires a "showing of impact to public interest separate and apart from showing an unfair and deceptive act."  Holiday Resort, 135 P.3d at 507 (citing Hangman Ridge, 719 P.2d at 536–38).  The public interest prong may be satisfied by a showing that the act or practice (1) injured persons besides the Plaintiffs; (2) had the capacity to injure other persons; or (3) has the capacity to injure other persons.  Wash. Rev. Code § 19.86.093.  *Accord* Alliance

Shippers, Inc. v. Always Transport, Inc., No. CV-09-3126-RMP, 2011 WL 4352310, at *5 (E.D.

Wash. Sept. 16, 2011).  In support of their request for judgment on this point, Plaintiffs argue

that Nautilus routinely affixed patent labels with misleading patent numbers on their products,

that this false marking occurred before and after the accused machines were manufactured, and

that it affected, and continues to affect, a number of consumers.  Mem. of P. & A. in Supp. of

Pls.' Partial Mot. for Summ. J. 26.  Plaintiffs further assert that consumers are harmed by

Nautilus's practice of false marking because it caused them to pay more for the accused

machines than they were worth.  *Id.* at 27.

A review of the parties' submissions, as well as the Court's independent research, has

failed to reveal a single Washington case interpreting the recently-enacted Section 19.86.093.  In

what appears to be its seminal CPA decision, issued before the enactment of Section 19.86.093,

the Washington Supreme Court laid out five factors to be considered in determining whether a

putative plaintiff had met the CPA's independent public interest requirement:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the
> acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed
> prior to the act involving plaintiff? (4) Is there a real and substantial potential for
> repetition of defendant's conduct after the act involving plaintiff? (5) If the act
> complained of involved a single transaction, were many consumers affected or likely to
> be affected by it?

Hangman Ridge, 719 P.2d at 538.  While the Hangman Ridge factors are not dispositive,

especially in light of the subsequently-passed statute, they are instructive to the Court's analysis.

Here, Nautilus's practice of mismarking the accused machines was not limited to its dealings

with the Plaintiffs.  In fact, the evidence shows that Nautilus applied the same or similar labels to

all the machines manufactured at its Independence plant and sold those machines to commercial

customers throughout the country.  *See* Webb Decl. ¶ 8.

20

As the Federal Circuit has recognized, false marking "deter[s] innovation and stifle[s] competition in the marketplace." Forest Grp., Inc. v. Bon Tool Co., 590 F.3d 1295, 1302 (Fed. Cir. 2009). Moreover, it has the potential to deter scientific research if a putative inventor is dissuaded by the false mark, or cause a competitor to expend additional and unnecessary resources in attempting to avoid infringing upon what she thinks is a valid patent. Id. at 1302–03. These injuries are, of course, speculative. At trial, the Plaintiffs will bear the burden of showing they suffered harm. The question for the Court on this element, however, is whether Nautilus's conduct had or has the capacity to injure other persons besides the Plaintiffs. Such a broadly-worded standard, coupled with the legislative admonition that the CPA must be construed liberally, convinces the Court that any reasonable trier of fact would be required to answer the inquiry in the affirmative. Therefore, the Motion is **GRANTED** as to this element of the CPA.

## IV.    Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment is

**GRANTED IN PART and DENIED IN PART.** Summary Judgment  is **GRANTED** as to the following: Nautilus falsely marked unpatented articles, to wit, the accused machines, as defined in the federal false marking statute (35 U.S.C. § 292);  it intended to dispose of real or personal property within the meaning of the California False Advertising Law  (Cal. Bus. & Prof. Code § 17500); and its conduct of mismarking the accused machines was done (1) in trade or commerce and (2) impacted the public interest within the meaning of the Washington Consumer Protection Act (Wash. Rev. Code §19.86.020).  The remainder of the Plaintiffs' Motion is **DENIED.**   The Court having ruled on this motion, the Plaintiffs' previous Motion for Summary Judgment (ECF

No. 56), filed prior to the enactment of the America Invents Act and the filing of the Plaintiffs'

First Amended Complaint, is **DISMISSED as MOOT.**  An appropriate Order shall issue this

day.

ENTER: This ___10th___ day of February, 2012.

_____
Senior United States District Judge

22